### DENNING et al. v. BRAY et al.

(Circuit Court of Appeals, Second Circuit. May 29, 1894.)

#### No. 114.

PATENTS—INTEREST OF PARTNERS.

An agreement provided that any invention in a specific article made by either one of the parties thereto should be owned jointly, and recited the object of the agreement to be the building up of a good business in the article patented. *Held*, that whatever right each acquired under this agreement in a patented invention of the other was only such as would accrue to him as a member of a partnership, and upon the termination of the partnership the interest of each in the invention of the other would cease.

Appeal from the Circuit Court of the United States for the Southern District of New York.

This was a suit by Morris P. Bray and Oscar Lublin against Edwin J. Denning and others for infringement of letters patent No. 440,246, granted to Morris P. Bray for a dress stay. There was a decree for the complainants (56 Fed. 1019), and the defendants appeal.

William A. Jenner, for appellants.
Charles E. Mitchell, for appellees.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge.   The patent is for a dress stay.   It was issued November 11, 1890, on application dated July 29, 1890, to the inventor, Morris P. Bray.   By a written assignment, dated May 2, 1891, and recorded in the patent office June 4, 1891, Bray transferred to Oscar Lublin one-half of all his right, title, and interest in said patent.   The defendants, E. J. Denning & Co., are dealers in dry goods, notions, and fancy articles, and as such have sold dress stays which are concededly within the claims of the patent.   The stays so sold were made by the firm of Stewart, Howe & May.   As the record title to the patent is in the complainants, its validity in no way assailed, and infringement conceded, defendants can justify their dealing in the articles only by showing that they had the right to sell them.   This they seek to do by proving that Stewart, Howe & May manufactured the articles under a license from one John Kendrick; and upon the defendants rests the burden of showing that Kendrick, though not an owner of record, had the right to license manufacture under the patent.   The contention that John Kendrick is the equitable owner of an undivided one-half interest in the patent in suit is based upon a written agreement between Bray and himself dated November 1, 1889.   Kendrick testifies also to an earlier agreement between them, which he says was executed May 12, 1888, and produces a draft or copy thereof signed and sealed by himself. Bray denies ever having signed this earlier agreement.   Of each of these men (Bray and Kendrick), it may be said that his narrative of his own transactions, his letters to his various associates (a correspondence with which the record is filled ad nauseum), and his individual conceptions of fair dealing, as evidenced by his conduct, must impress whoever studies the case with the conviction that his unsupported testimony is entitled to but little weight. As to this alleged first agreement, therefore, the evidence standing oath against oath, and both witnesses being of doubtful veracity, defendants have failed to sustain the burden they assumed.   The making of the agreement of November 1, 1889, however, is conceded, and some antecedent circumstances are sufficiently proved. Some time in 1888, Bray and Kendrick, who had been jointly interested in some corset patents, and had frequently traveled together as salesmen, began to discuss the desirability of going into the business of making and selling dress stays.   In October, 1888, Bray applied for a patent on a garment stay consisting of two steels in parallel pockets, combined with a cord at the edge of the stays, the cord being introduced in the process of weaving.   Patent was issued therefor on January 22, 1889 (396,533), to Bray, assignor of one-half to Kendrick, and upon this patent the invention covered by the patent in suit is concededly an improvement.   The various discussions between Bray and Kendrick as to going into

the dress-stay business found final expression in the agreement of November 1, 1889, which was recorded in the patent office October 30, 1890. It is as follows:

"Whereas, Morris P. Bray, of Ansonia, Conn., and John Kendrick, of St. Louis, Mo., are jointly owners of letters patent dated January 22, 1889 (No. 396,533); and whereas, it is mutually agreed by and between said Bray and Kendrick to share and share alike in said letters patent, and all other inventions to be made appertaining to dress or garment stays (outside of corset stays), it is hereby agreed as follows: Witnesseth, the said Bray and said Kendrick, for and in consideration of one dollar each to the other paid, the receipt of which is hereby acknowledged, hereby agree not to sell any part of said letters patent dated January 22, 1889 (No. 396,533), nor to license any other parties to make said dress stays under said patent, or to make or sell, or cause to be made or sold, any of said stays, excepting as shall be sold or made, or caused to be made and sold, jointly by said Bray and Kendrick. It is hereby further agreed that neither party shall make any new invention on dress stays, or cause to be made any new improvements in dress stays, independent of the other party, and that any and all inventions and improvements, either mechanical or design, shall be owned jointly and mutually by said Bray and said Kendrick. The object of this agreement is to create and build up a good business on dress stays, said business to be owned and shared mutually and equally by said Bray and said Kendrick. It is hereby further agreed that, in case any new invention is made by either said Bray or said Kendrick which the parties to this agreement should not wish to adopt, the party making the invention shall not negotiate for its sale or use to any other parties without the written consent of the other party. In witness whereof, we have this 1st day of November, 1889, set our hands and seals.

"Morris P. Bray. [Seal.]
"John Kendrick. [Seal.]

"Witness: Geo. M. Treat."

The learned judge who tried the case at circuit construed this agreement as providing that whatever rights either might, by its terms, acquire in future inventions of the other, should be "qualified down to the requirements of the business" they were undertaking to build up, and that when that business ceased each patent for an improvement should remain the property of the individual inventor, unqualified by any further interest of the other therein. We are of the same opinion. The provisions of the agreement, undoubtedly, secured to each an equitable interest in any patent for an improvement taken out by the other, but precisely what that interest was must be determined by a consideration of the whole document. The object to be accomplished by the agreement is expressly stated to be the creation and building up of a good business in dress stays, which business was to be owned and shared mutually and equally by both. All provisions in the contract which are at all susceptible of a double meaning must be so construed as to harmonize with this fundamental object. Manifestly, the underlying consideration for the contributions of each to the common purpose is the profit anticipated from the creation and sharing in such business; and a court will not be astute so to construe it that, in the event of the consideration failing, the unexpended contributions of either should still remain the property of the other. Assuming that Kendrick had invented and applied for patents on several valuable "improvements" within a month after the making of the agreement, and then died before the business contem-

plated had been created or built up,—before even a single stay had been sold or contracted for,—could it be reasonably contended that it was the intention of the parties that the new patents should issue one-half to Bray? Or was it the intent of the agreement to give to both such an ownership of patents for the inventions of each as would enable each noninventor to create and build up a business by licensing outsiders, independently of the other? There seems but one answer to these questions, and the language used by the contracting parties, when taken as a whole, expresses what appears to have been their intent. As to the patent already owned in common (that of 1889), each agrees not to sell his share, nor to give any license to make stays thereunder, nor to make or sell, or cause to be made or sold, any of said stays, except jointly. As to new inventions, each agreed not to make improvements independent of the other, and that all inventions and improvements, either mechanical or design, shall be owned jointly and mutually by them; but they do not provide for any assignment of patents to be issued for such inventions or improvements, and state that the object of the agreement is the creation and building up of the business in which, by the agreement, they became partners. As to inventions of either which both may not "wish to adopt,"— that is, to put into their mutual business,—they secure themselves against possible competition from outsiders by a clause providing that the party making the invention shall not negotiate for its sale or use without the written consent of the other. Whatever right each acquired under this agreement in a patented invention of the other was therefore only such as would accrue to him as a member of the partnership, to which, during its existence, and for its business use, the invention was contributed by the other. Otherwise than as a member of the partnership, or for purposes other than those which that partnership was formed to accomplish, he acquired no interest, legal or equitable, in such patents; and upon the termination of the partnership the interest of each in the inventions of the other would cease and determine.

This construction of the agreement renders it unnecessary to review the long narrative of subsequent events,—the arrangements which Bray and Kendrick made with Lublin; the formation of the firm known as the "Twin Dress-Stay Company;" its dissolution, and the papers executed upon such dissolution. Appellants' counsel concedes in his brief that the agreement of November 1, 1889, created between Bray and Kendrick a partnership relation, with no stated term, and terminable at will. It is plain, upon the evidence, that it was so terminated long ago, and the mutual business of the partners abandoned by both. There is nothing to overcome the prima facie proof of invention by Bray, which the letters patent afford; and, the partnership business to which it was temporarily appropriated having terminated, all equitable interest of his former partner therein ceased. Defendants having failed to make out the defense of license, the decree of the circuit court was correct, and judgment is affirmed, with costs.