## HERRING v. MODESTO IRR. DIST.

### (Circuit Court, N. D. California.   June 30, 1899.)

### No. 12,615.

1. **JURISDICTION OF FEDERAL COURTS—EFFECT OF STATE STATUTES.**

    The fact that a plaintiff is given a different remedy in the state courts cannot affect the jurisdiction of a federal court to entertain his action, where, by reason of his citizenship and the amount involved, he has the right to sue in that court.[1]

2. **MUNICIPAL BONDS—ACTION BY HOLDER FOR JUDGMENT—SUFFICIENCY OF COMPLAINT.**

    A complaint filed in a federal court, in an action of which it has jurisdiction, alleging that plaintiff is the owner of coupons from negotiable bonds duly issued in conformity to law by a California irrigation district, and that such coupons are past due and unpaid, states a cause of action which entitles the plaintiff to a judgment against the district. The fact that such coupons are, under the statute, to be paid from a special fund, to be raised by the officers of the district in a special manner, does not impose on the plaintiff the necessity of alleging that such fund has been raised, or that the officers have failed to perform their duty to raise it, nor does the fact that payment can in either case only be enforced by means of a mandamus affect the plaintiff's right to a judgment, since in a federal court such relief can only be afforded after a judgment as a means for its enforcement.

3. **CALIFORNIA IRRIGATION DISTRICTS—RIGHT TO PLEAD ILLEGALITY OF ORGANIZATION.**

    The supreme court of California having in numerous decisions upheld the constitutionality of the Wright act (St. Cal. 1886 & Ex. Sess. 1887, p. 29), providing for the organization and government of irrigation districts, a district organized under its provisions, and which continues to exist, is at least a de facto municipal corporation, and its officers de facto officers; and the legality of its organization cannot be collaterally attacked by an individual, or pleaded by the district itself for the purpose of defeating obligations which it incurred while acting as such de facto corporation.

4. **SAME—DEFENSE TO BONDS—CHARACTER OF LAND IN DISTRICT.**

    The question whether land embraced within an irrigation district is of a character which would be benefited by a system of irrigation is one of fact, which the statute of California commits to the determination of the board of supervisors of the county on the application for organization of the district; and, in the absence of allegations of fraud or bad faith, their decision is conclusive, and the question cannot be raised by the district as a defense to bonds it has issued.

5. **SAME—FAILURE TO REVIEW BENEFITS.**

    Allegations in the answer of an irrigation district in a suit on its bonds that the district has derived no benefit from the work constitute no defense, and are immaterial.

6. **SAME—EXCLUSION OF TERRITORY FROM DISTRICT.**

    The exclusion of lands from an irrigation district after its organization under the provisions of the California statute cannot affect the validity of bonds issued by the district.

Rosenbaum & Scheeline and Chickering, Thomas & Gregory, for plaintiff.

Rodgers, Paterson & Slack and C. W. Eastin, for defendant.

[1] As to effect of state laws on federal jurisdiction generally, see note to Barling v. Bank, 1 C. C. A. 513.

95 F.—45

On Motion of Defendant for Judgment on the Pleadings.

MORROW, Circuit Judge. This is a suit brought by the plaintiff, a citizen of the United Kingdom of Great Britain and Ireland, for the payment of 1,176 interest coupons attached to 271 bonds, in the sum of $500 each, issued by the defendant, of which plaintiff is now the owner and holder. It is alleged in the complaint that the defendant is an irrigation district organized, incorporated, and existing under and by virtue of an act of the legislature of the state of California entitled "An act to provide for the organization and government of irrigation districts, and to provide for the acquisition of water and other property, and for the distribution of water thereby, for irrigation purposes," approved March 7, 1887, and the several acts passed by the said legislature amendatory and supplementary to said act, and that said irrigation district is wholly situate in the county of Stanislaus, state of California; that on or about January 1, 1892, the bonds were issued to which the coupons herein sued upon were attached, being a portion of the bonds of said district, to the amount of $800,000, authorized to be issued by the vote of the qualified electors of said district at an election duly called and held; that no part of the coupons enumerated in the complaint has been paid; and that there is owing to plaintiff therefor $17,640, with interest at the rate of 7 per cent. per annum from the date when each of said coupons, respectively, fell due. A motion for a judgment on the pleadings has been made by the defendant on the grounds that the complaint does not state facts sufficient to constitute a cause of action; that the interest coupons can be paid only out of a special fund to be raised by the district, through its officers, in a specified mode, prescribed by the statutes providing for the organization and government of quasi public corporations, like the defendant; that the complaint does not allege or show that the officers of the district have failed to adopt all or any of the means prescribed by the aforesaid statutes to raise or create such fund, or that the failure to pay the interest coupons sued upon is due to the fact that no such fund has been raised or created; that, if the failure to pay the interest coupons was based upon a denial of their validity, such validity can be determined only in a suit in equity; that if the failure to make such payment was due to a mere arbitrary disobedience or disregard of the statutes, while there was in existence the special fund above mentioned, out of which payment could have been made, then the remedy of the plaintiff was limited to proceedings in mandamus in the state courts, against the treasurer of the district, to compel payment out of said fund; that if such nonpayment was due to the fact that there was no such fund in existence, out of which payment could have been made, because of the neglect of the officers of the district to pursue the means prescribed by said statutes for the creation of such fund, then the remedy of the plaintiff is limited to a mandamus proceeding in the state courts to compel said officers to make the necessary levy to raise or create such fund; that, if the interest coupons sued upon are concededly valid, then they amount or are equivalent to audited claims, and a judgment thereon could give them no greater validity, and the plaintiff's remedy would still be mandamus to com-

pel payment out of an existing special fund, or to compel the creation of the same; that a judgment herein would not change the nature or character of the claim of the plaintiff, nor make the same payable out of a different fund or in a different manner from that prescribed by said statute; that, inasmuch as the district has no general power of taxation or of levying assessments, the plaintiff can in no event be paid, except out of such moneys as may be found in or raised for said special fund; that inasmuch as the defendant is a mere public agency, and as all property acquired, held, owned, or possessed by it has been acquired and is held, owned, and possessed by it in trust, and not in private ownership, to enable it to carry into effect the objects for which it has been created, none of such property can be subjected to execution. The demurrer to the complaint heretofore interposed by the defendant, and overruled, disposed of all questions as to the sufficiency of the complaint raised by defendant's motion for a judgment on the pleadings, but the importance of the questions involved will justify the court in further considering the matters urged upon the attention of the court by this motion.

The bonds to which were attached the coupons involved in this action were issued under the authority of an act of the legislature of the state of California commonly known as the "Wright Act." It is entitled "An act to provide for the organization and government of irrigation districts, and to provide for the acquisition of water and other property, and for the distribution of water thereby for irrigation purposes," approved March 7, 1887 (St. Cal. 1886 & Ex. Sess. 1887, p. 29). The act has been several times amended (St. Cal. 1889, p. 15, and St. Cal. 1891, pp. 53, 142, 147, 244), and at the session of the legislature of 1897 an entirely new act was passed (St. Cal. 1897, p. 254). The provisions of the act of 1887, as amended, relating to the issue of bonds by the boards of directors of irrigation districts, and providing for the payment of the principal and interest of such bonds, are as follows:

"Sec. 15. For the purpose of constructing necessary irrigating canals and works, and acquiring the necessary property and rights therefor, and otherwise carrying out the provisions of this act, the board of directors of any such district must, as soon after such district has been organized as may be practicable, and whenever thereafter the construction fund has been exhausted by expenditures herein authorized therefrom, and the board deem it necessary or expedient to raise additional money for said purposes, estimate and determine the amount of money necessary to be raised, and shall immediately thereafter call a special election, at which shall be submitted to the electors of such district, possessing the qualifications prescribed by this act, the question whether or not the bonds of said district in the amount as determined shall be issued. Notice of such election must be given, by posting notices in three public places in each election precinct in said district, for at least twenty days, and also by publication of such notice in some newspaper published in the county where the office of the board of directors of such district is required to be kept, once a week for at least three consecutive weeks. Such notices must specify the time of holding the election, and the amount of bonds proposed to be issued; and said election must be held and the result thereof determined and declared in all respects as nearly as practicable in conformity with the provisions of this act governing the election of officers: provided, that no informalities in conducting such an election shall invalidate the same, if the election shall have been otherwise fairly conducted. At such election the ballots shall contain the words, 'Bonds—Yes,' or 'Bonds—No,' or words equivalent thereto. If a majority of the votes

cast are, 'Bonds—Yes,' the board of directors shall cause bonds in said amount to be issued; if a majority of the votes cast at any bond election are 'Bonds—No,' the result of said election shall be so declared and entered of record, and whenever thereafter said board in its judgment deems it for the best interests of the district that the question of issuance of bonds in said amount, or any amount, shall be submitted to said electors, it shall so declare of record in its minutes, and may thereupon submit such question to said electors in the same manner and with like effect as at such previous election. Said bonds shall be payable in gold coin of the United States. * * * The principal and interest shall be payable at the place designated therein. Said bonds shall be each of the denomination of not less than one hundred dollars nor more than five hundred dollars; shall be negotiable in form, signed by the president and secretary, and the seal of the board of directors shall be affixed thereto. * * * Coupons for the interest shall be attached to each bond, signed by the secretary. Said bonds shall express on their face that they were issued by authority of this act, stating its title and date of approval, and shall also so state the number of the issue of which such bonds are a part. * * *" Amended by the act of March 20, 1891 (St. Cal. 1891, p. 147).

"Sec. 17. Said bonds, and the interest thereon, shall be paid by revenue derived from an annual assessment upon the real property of the district; and all the real property in the district shall be and remain liable to be assessed for such payments as hereinafter provided." Re-enacted as section 33, Act March 31, 1897 (St. Cal. 1897, p. 265).

"Sec. 18. The assessor must, between the first Monday in March and the first Monday in June, in each year, assess all real property in the district to the persons who own, claim, have the possession or control thereof, at its full cash value." Amended by the act of March 31, 1891 (St. Cal. 1891, p. 244).

"Sec. 22. The board of directors shall then levy an assessment sufficient to raise the annual interest on the outstanding bonds, and at the expiration of ten years after the issuing of bonds of any issue, must increase said assessment to an amount sufficient to raise a sum sufficient to pay the principal of the outstanding bonds as they mature. The secretary of the board must compute and enter in a separate column of the assessment book the respective sums in dollars and cents, to be paid as an assessment on the property therein enumerated. When collected the assessment shall be paid into the district treasury, and shall constitute a special fund, to be called the 'Bond Fund, —— Irrigation District.' In case of the neglect or refusal of the board of directors to cause such assessment and levy to be made, as in this act provided, then the assessment of property made by the county assessor and the state board of equalization shall be adopted, and shall be the basis of assessments for the district, and the board of supervisors of the county in which the office of the board of directors is situated shall cause an assessment roll for said district to be prepared, and shall make the levy required by this act in the same manner and with like effect as if the same had been made by said board of directors, and all expenses incident thereto shall be borne by such district. In case of the neglect or refusal of the collector or treasurer of the district to perform the duties imposed by law, then the tax collector and treasurer of the county in which the office of the board of directors is situated must respectively perform such duties, and shall be accountable therefor upon their official bonds as in other cases." Amended by the act of March 20, 1891 (St. Cal. 1891, p. 149).

It will be observed that it is expressly provided in section 15 of the act that the bonds "shall be negotiable in form, signed by the president and secretary, and the seal of the board of directors shall be affixed thereto." It appears from the complaint that the bonds to which were attached the coupons involved in this action were, pursuant to the requirements of the statute, dated, signed by the president and secretary of the board of directors, and the corporate seal of the district attached; that the bonds were in denominations of $500 each, payable to bearer at a time and place designated, and

expressed on their face that they were issued by authority of, pursuant to, and upon a full compliance with, the act of March 7, 1887; that the coupons attached, representing the interest on the bonds at 6 per cent. per annum, payable semiannually, were signed by the secretary, and also made payable to bearer at a time and place specified in the coupon. The defendant was authorized by the statute to issue negotiable, interest-bearing bonds, and it appears that the authority was executed in the form prescribed.

This action is at law, to recover a money judgment on each of the coupons mentioned in the complaint, that has become due and payable under the provisions of the statute and the terms of the contract contained in the bonds. The fact that these coupons are to be paid out of a fund to be raised by the officers of the district in a specified manner does not impose upon the plaintiff the necessity of alleging that these officers have failed to perform their duty. The suit is not upon an order or warrant issued by a municipal officer, but upon a corporate promise to pay, with respect to which there has been a default. In Travelers' Ins. Co. v. City of Denver (Colo. Sup.) 18 Pac. 556, 558; Reeve v. City of Oshkosh, 33 Wis. 477; Campbell v. Polk Co., 49 Mo. 214; Board v. Mason, 9 Ind. 97; Cloud v. Town of Sumas (Wash.) 37 Pac. 305; Aylesworth v. Gratiot Co., 43 Fed. 350,—the actions were all founded upon the failure of a municipal officer to pay an order or warrant drawn by another officer of the corporation. The present cause of action is based upon the failure of the defendant to pay a certain sum of money at a time and place specified in its contract. For this default the plaintiff is entitled to maintain this action. And it is immaterial, in determining the sufficiency of the complaint, to consider how the judgment in the suit may be enforced. The fact that the plaintiff could proceed directly by mandamus in the state courts does not oust this court of its jurisdiction. This doctrine has been abundantly established by authority.

In 2 Dill. Mun. Corp. § 856, it is said:

"The remedy of the municipal or county bondholder in the federal courts is to sue at law and obtain a judgment to establish the validity and amount of his debt. Thereupon it is usual to issue execution, if the corporate debtor can by law have property subject to execution. On a return of the writ nulla bona or unsatisfied, application is made upon an information or relation, under oath, reciting these facts, for a mandamus to compel the levy and collection of a tax to pay the judgment. But if the bondholder is by the statute entitled to a levy of a special tax to pay his judgment, and if the duty of levying it has been neglected or refused, it is not necessary that an execution should in such case be returned nulla bona, in order to give the judgment creditor the right to a mandamus."

In Greene Co. v. Daniel and Pickens Co. v. Same, 102 U. S. 187, two actions at law were brought upon coupons issued by the counties in question under the provisions of an act authorizing them to subscribe to the stock of such railroads throughout the state as they might consider most conducive to their respective interests. By sections 7 and 8 of the act it was made the duty of the commissioners' court to levy and see to the collection of such tax, not exceeding 1 per cent. per annum on the taxable value of the property in the

county, as should be necessary to meet the interest as it fell due. The question as to the sufficiency of the complaint was raised on demurrer. The supreme court, speaking through Chief Justice Waite, said:

"In the state courts, under the rule as stated in Shinbone v. Randolph Co., 56 Ala. 183, and other cases, a mandamus would lie, without reducing the coupons to judgment, to compel the commissioners' court to levy and collect the taxes necessary to pay what was due. The rule is different, however, in the courts of the United States, where such a writ can only be granted in aid of an existing jurisdiction. There a judgment at law on the coupons is necessary, to support such a writ. The mandamus is in the nature of an execution to carry the judgment into effect. Bath Co. v. Amy, 13 Wall. 244; Graham v. Norton, 15 Wall. 427. A suit, therefore, to get judgment on the bonds or coupons, is part of the necessary machinery which the courts of the United States must use in enforcing the claim, and the jurisdiction of those courts is not to be ousted simply because in the courts of the state a remedy may be afforded in another way."

In Heine v. Commissioners, 19 Wall. 655, the suit was in chancery, brought by Heine and others, holders of bonds issued by what was called the "Board of Levee Commissioners" of a levee district in the state of Louisiana. The board was made a quasi corporation by the legislature of Louisiana, with authority to issue the bonds, and provide for the payment of interest and principal by taxes upon the real and personal property within the district. The bill alleged a failure to levy these taxes and to pay the interest on any part of said bonds, that the persons duly appointed levee commissioners had pretended to resign their office for the purpose of evading this duty, and that the complainants had applied in vain to the judge of the district court, who was by statute authorized to levy a tax on the alluvial lands to pay the bonds if the levee commissioners failed to do so. The prayer for relief was that the levee commissioners be required to assess and collect the tax necessary to pay the bonds and interest, and if, after reasonable time, they failed to do so, that the district judge be ordered to do the same. No judgment at law had been recovered on the bonds, or any of them, nor any attempt to collect the money due by suit in the common-law court. The court, speaking through Mr. Justice Miller, said:

"The question presented by the present case is not a new one in this court. It has been decided in numerous cases, founded on the refusal to pay corporation bonds, that the appropriate proceeding was to sue at law, and by a judgment of the court establish the validity of the claim and the amount due, and by the return of an ordinary execution ascertain that no property of the corporation could be found liable to such execution, and sufficient to satisfy the judgment. Then, if the corporation had authority to levy and collect taxes for the payment of that debt, a mandamus would issue to compel them to raise by taxation the amount necessary to satisfy the debt."

Waite v. City of Santa Cruz, 89 Fed. 619, was an action to recover on certain bonds and interest coupons alleged to have been issued by the defendant. The objection was made that the court had no jurisdiction of the action, and in support of this objection it was contended that the defendant did not contract to pay the bonds out of any property or assets subject to execution, but only out of taxes to be levied and collected by its officers. Judge De Haven, reviewed the authorities on the subject, and determined, in effect, that the

fact that a circuit court of the United States has no jurisdiction of an original proceeding for a writ of mandamus to compel municipal officers to levy a tax to pay bonds does not affect its jurisdiction of an action at law by a citizen of another state to recover judgment on such bonds, though any judgment recovered can be enforced only by mandamus proceedings against such officers. Applying this rule to the question now under consideration, it must be held that the complaint is sufficient. The motion for a judgment on the pleadings will therefore be denied.

On Amended Demurrer to Defendant's Answer, and Motion of Plaintiff to Strike Out Parts of Defendant's Answer.

The statutes of the state of California referred to in this opinion, and a more extended reference to the pleadings, will be found in the opinion just delivered on the motion for a judgment on the pleadings.

The complaint, after stating a cause of action upon the coupons in suit, alleges that subsequent to the issuance of the bonds to which the coupons in question were attached, and prior to the commencement of this action, the plaintiff did in good faith, in the ordinary course of business and for value, before the apparent maturity of the said bonds, and without knowledge of their actual dishonor, purchase the same, and also the coupons attached. The defendant in its answer denies all the allegations of the complaint. The question whether the plaintiff is the bona fide holder of the bonds and coupons, for value and without notice, is therefore in issue.

In its answer the defendant sets up as a further and separate defense the proceedings had in its organization, and alleges, in effect, that, by reason of certain specified defects in such proceedings, it was not legally organized in accordance with the provisions of the act of the legislature of March 7, 1887 (St. Cal. 1886 & Ex. Sess. 1887, p. 29), and was not during all or any of the time mentioned in the amended complaint an irrigation district; that there never have been, and there are not now, any officers of the said irrigation district; that none of the several persons mentioned and referred to in the amended complaint ever had any jurisdiction, power, or authority of law to issue the bonds or coupons which are the subject of controversy in this action; and that the same are void. And for a still further and separate defense the defendant sets forth in detail the proceedings taken in issuing the bonds of the district, including those described in the complaint as being owned by plaintiff, and alleges, in effect, that they were not issued at one time, and in the manner provided by section 15 of the act of March 7, 1887, but were issued and will mature at different times; that they were not sold for cash, as required by said act, but were exchanged for work done under certain contracts with the officers of the district; that by reason of the facts alleged the exchange of the bonds was illegal, and the levy and collection of assessments upon and against the land of said district invalid, and all the provisions of the act of March 7, 1887, so far as the same relate to the defendant, are each of them unconstitutional and void. The plaintiff demurs to these affirmative defenses on the general grounds that the facts alleged

are insufficient to constitute defenses, and specifically that the first-named affirmative defense, relating to the organization of the district, is barred by the provisions of section 3 of the act of the legislature of California approved March 3, 1891, entitled "An act to amend an act entitled 'An act to provide for the organization and government of irrigation districts,'" and that the second affirmative defense is unintelligible, ambiguous, and uncertain.

The facts alleged in the first affirmative defense, so far as they are material to the question of the sufficiency of that defense, are substantially as follows: It is alleged that a petition for the organization of an irrigation district under the provisions of an act of the legislature of California providing for the organization and government of irrigation districts, and for the acquisition of water and other property, and the distribution of water thereby for irrigation purposes, approved March 7, 1887, was presented to the board of supervisors of the county of Stanislaus, state of California, on or about May 11, 1887, describing the lands to be comprised within said proposed district, and signed by 73 persons, represented in said petition to be freeholders owning land susceptible of one mode of irrigation from a common source, and by the same system of works. It is alleged that, of the names signed to this petition, 21 were the names of persons owning no property in said district; 25 were the names of persons owning no land outside the city of Modesto, a municipal corporation within the boundaries of said irrigation district; 11 were the names of persons owning only a right of redemption of certain real property which had formerly been owned by them, respectively; and 5 were the names of persons whose interests in lands in the district are represented as being not that of freeholders. It is claimed that these disqualified petitioners reduced the number of qualified petitioners below the number of 50, required by section 1 of the act of March 7, 1887. It is further alleged that from the 25th day of April, 1887, to the 10th day of May, 1887, this petition was printed in a daily newspaper in the county of Stanislaus, together with the following:

"Notice is hereby given that the above petition will be presented to the board of supervisors at their regular meeting on Wednesday, May 11, 1887, at 11 o'clock a. m."

It is alleged that this notice was not signed by said petitioners, or any of them, or by any one, and the same did not specify any place where the petition therein referred to, or any petition, could be presented, nor to whom the same could be presented. It is further alleged that between May 11, 1887, and June 6, 1887, testimony was taken by said board relating to said petition in favor of and against the organization of said district, and on the last-named day seven of the persons who signed the petition for the formation of the irrigation district gave notice of their withdrawal from said petition; that on the 7th day of June, 1887, the board made an order that the territory comprised within certain described boundaries was thereby established and defined for organization as an irrigation district under the act approved March 7, 1887, to be known and designated as "Modesto Irrigation District." It is alleged that this order was

illegal, invalid, and unauthorized, for the reason that the board attempted to make certain important and material changes in the boundaries of the district, as the same were described and defined in the petition; that certain large bodies of agricultural land, which were included within the boundaries proposed by the petition, were excluded from the boundaries defined by the order of the board of supervisors, without the consent of the petitioners, and without notice to them, or to any other persons owning real property within the boundaries described in the petition, that such changes would be made in the boundaries of the district. It is further alleged that an election was held in the proposed district for the purpose of determining whether the district should be organized, the returns were canvassed, and an order made by the board of supervisors declaring that the said lands had been organized as such district in accordance with the result of said election; that a copy of said order was thereafter recorded in the office of the recorder of Stanislaus county on July 18, 1887. It is alleged that it does not appear from said order that any proof was made to the board of supervisors that said organization election was held, nor was it ascertained or determined by said board that said election was in fact held, or that notice of said election was given by any one, either as required by law or at all, or, if said notice was given, by whom the same was given, nor whether said election, if held at all, was held and conducted in accordance with law and said order. Numerous defects and omissions other than those mentioned are charged to have occurred in the proceedings taken to organize the district, but those referred to are sufficient to indicate their general character.

From the facts stated in the answer, it appears that the Modesto irrigation district had been exercising the powers of a municipal corporation openly and publicly for several years prior to the time when plaintiff became the owner of the bonds of the district, and for more than 10 years prior to the commencement of this action.

The leading case cited by defendant in support of its right to set up in its answer the alleged defective and illegal proceedings connected with its organization as an irrigation district is Norton v. Shelby Co., 118 U. S. 425, 6 Sup. Ct. 1121. The action in that case was to enforce the payment of 29 bonds, for $1,000 each, issued by the board of commissioners of Shelby county, Tenn., in payment of a subscription by the county to stock in the Mississippi River Railroad Company. The act of the legislature under which the board of commissioners proceeded in subscribing for the stock of the railroad company, and in issuing the bonds of the county, was declared by the supreme court of Tennessee to be unconstitutional and invalid, and the board of commissioners created by it to have had no legal existence. A judgment in the suit was accordingly entered in favor of the defendant. The case was taken to the supreme court of the United States by writ of error. The plaintiff there contended, among other things, (1) that the commissioners by whose direction the bonds were issued, and whose president signed them, were lawful officers of Shelby county, and authorized, under the acts mentioned in the heading of the bonds, to represent and bind the county by the sub-

scription to the railroad company, and that the bonds issued were therefore its legal obligations; (2) that, if the commissioners were not officers de jure of the county, they were officers de facto, and as such their action in making the subscription and issuing the bonds was equally binding upon the county. The defendant contended (1) that the commissioners were not lawful officers of the county, and that there was no such office in Tennessee as that of county commissioner; (2) that there could not be any such de facto officers, as there were no such officers known to the law, and, therefore, that the subscription was made and the bonds were issued without authority, and were void. The supreme court, in disposing of these questions, held that the decision of the supreme court of Tennessee as to the constitutional existence of the board of commissioners of Shelby county would be recognized as authoritative, and as that court had repeatedly adjudged, after careful and full consideration, that no such board ever had a lawful existence, and it was an unauthorized and illegal body, the supreme court of the United States could neither gainsay nor deny the authoritative character of that determination, but would hold that there was no lawful authority in the board to make the subscription to the Mississippi River Railroad Company, and to issue the bonds of which those in suit were a part. The court then proceeded to consider the question whether the commissioners were officers de facto, and the acts of the board as a de facto board binding upon the county. The court said:

"But it is contended that if the act creating the board was void, and the commissioners were not officers de jure, they were nevertheless officers de facto, and that the acts of the board as a de facto court are binding upon the county. This contention is met by the fact that there can be no officer, either de jure or de facto, if there be no office to fill. As the act attempting to create the office of commissioner never became a law, the office never came into existence. Some persons pretended that they held the office, but the law never recognized their pretensions, nor did the supreme court of the state. Whenever such pretensions were considered in that court, they were declared to be without any legal foundation, and the commissioners were held to be usurpers. The doctrine which gives validity to acts of officers de facto, whatever defects there may be in the legality of their appointment or election, is founded upon considerations of policy and necessity, for the protection of the public and individuals whose interests may be affected thereby. Offices are created for the benefit of the public, and private parties are not permitted to inquire into the title of persons clothed with the evidence of such offices, and in apparent possession of their powers and functions. For the good order and peace of society, their authority is to be respected and obeyed until in some regular mode prescribed by law their title is investigated and determined. It is manifest that endless confusion would result if in every proceeding before such officers their title could be called in question. But the idea of an officer implies the existence of an office which he holds. It would be a misapplication of terms to call one an officer who holds no office, and a public office can exist only by force of law. This seems to us so obvious that we should hardly feel called upon to consider any adverse opinion on the subject, but for the earnest contention of plaintiff's counsel that such existence is not essential, and that it is sufficient if the office be provided for by any legislative enactment, however invalid. Their position is that a legislative act, though unconstitutional, may in terms create an office, and nothing further than its apparent existence is necessary to give validity to the acts of its assumed incumbent. That position, although not stated in this broad form, amounts to nothing else. It is difficult to meet it by any argument beyond this statement. An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords

no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed."

In the case at bar the constitutionality of the act under which the defendant was incorporated as an irrigation district has been repeatedly before the supreme court of the state, and it has been held constitutional and valid in every case. In Irrigation Dist. v. Williams, 76 Cal. 360, 18 Pac. 379, the application was for a writ of mandamus to compel the defendant, as secretary of an irrigation district organized under the act in question, to sign certain bonds proposed to be issued under section 15 of the act. The defendant refused to sign the bonds upon the ground that the statute was unconstitutional and void, and it was urged in this behalf, among other things, that the statute authorized the assessment and taking of private property for a private purpose, and without reference to actual benefits, that the apportionment was unequal and unjust, that property was taken without due process of law, and that the statute authorized the formation of a district and the assessment of lands without giving all the landholders a hearing. The objections were held untenable, and the act declared to be in conformity with the provisions of the state constitution. In Irrigation Dist. v. De Lappe, 79 Cal. 351, 21 Pac. 825, the application was again for a mandate to compel the secretary of an irrigation district to sign and seal certain bonds of the district, and the constitutionality of the act was sustained. In Board v. Tregea, 88 Cal. 334, 26 Pac. 237, proceedings had been instituted in the superior court of Stanislaus county, under the provisions of the act of March 16, 1889 (St. 1889, p. 212), for the purpose of obtaining judicial examination, approval, and confirmation of the proceedings of the board of directors of the district providing for the issue and sale of certain bonds which it had ordered to be issued and sold under the act of March 7, 1887. The fact appeared that the district included the city of Modesto, a town covering about 2,000 acres, and having about 3,000 inhabitants, and about 600 dwelling houses, besides shops, stores, etc. It seems to have been urged as one of the objections against the confirmation of the proceedings in question that if the law was construed as conferring upon the board of directors of an irrigation district the discretion to include in such a district any part of the lands of a town or city, upon the ground that in the judgment of the directors such part would be benefited by irrigation under the system proposed, and if the judgment of the board upon that question was conclusive of the fact, then the law was unconstitutional. The court, speaking through Chief Justice Beatty, construed the law to mean "that the board may include in the boundaries of the district all lands which in their natural state would be benefited by irrigation, and are susceptible of irrigation by one system, regardless of the fact that buildings or other structures may have been erected here and there upon small lots, which are thereby rendered unfit for cultivation, at the same time that their value for other purposes may have been greatly enhanced"; and, so construed, the court saw no objections to the law upon constitutional grounds. It was also objected that the proceedings of the board should not be confirmed, because, when the

original authorization was given by the people of the district to issue bonds, the district embraced 108,000 acres; that 28,000 acres of this territory was afterwards excluded from the district, under the act of February 16, 1889 (St. 1889, p. 21). It was accordingly contended that, if the legislature intended to bind the new or reconstructed district by a vote of the old district, the law, to that extent, would be unconstitutional. The court held that the fact being that, at the time of the exclusion of the 28,000 acres from the district, it had no debt, and after notice of the proceedings no objection was made to such exclusion by any person, there was no basis for any claim of injustice or violation of constitutional rights. In the case entitled In re Madera Irr. Dist., 92 Cal. 296, 28 Pac. 272, 675, the board of directors of the district filed a petition in the superior court of the county of Fresno for the confirmation by that court of their proceedings for the issue and sale of certain bonds of the district. The lower court, after a hearing upon the issues, rendered its judgment in favor of the petitioners, and approved and confirmed the legality and the validity of each and all the proceedings for the organization of the district. The case was appealed to the supreme court of the state, where it was again contended that the act of March 7, 1887, under which the proceedings for the organization of the district were had, was unconstitutional, for the reason that it was in its nature beyond the power of the legislature to enact, and also by reason of the provisions therein contained for the organization of the district, and the mode provided for assessments upon the lands in said district with which to meet the bonds authorized by the act. The case appears to have been elaborately discussed by counsel upon all the constitutional questions involved, and the opinion of the court, delivered by Mr. Justice Harrison, gives evidence of a thorough examination of all the objections urged against the act of March 7, 1887, and the proceedings therein provided for the organization of irrigation districts, and the issue and sale of bonds by the boards of directors of the districts. The court affirmed the constitutionality of the act, and determined that an irrigation district organized under the act was a public corporation, and its officers public officers of the state. In the case entitled In re Central Irr. Dist., 117 Cal. 382, 49 Pac. 354, a petition was filed by the board of directors of the Central irrigation district in the superior court of the county of Glenn, for the confirmation by that court of the proceedings leading to and terminating in the organization of the irrigation district, and the proceedings attending the issue and sale of bonds of the district. The findings of the court were in favor of the regularity and legality of all the proceedings. On appeal to the supreme court the act was assailed as in violation of both the constitution of the state and of the United States. The court held that previous decisions of that court, and the decision of the supreme court of the United States in Irrigation Dist. v. Bradley, 164 U. S. 112, 17 Sup. Ct. 56, formed conclusive adjudication in favor of the constitutionality of the act. An irrigation district formed under the statutes of California is a public corporation, and its object is the promotion of the general welfare. People v. Selma Irr. Dist., 98 Cal. 206, 32 Pac. 1047; Quint v. Hoff-

man, 103 Cal. 506, 37 Pac. 514. In the case entitled In re Madera Irr. Dist., 92 Cal. 308, 28 Pac. 273, the supreme court of the state, speaking of the authority of the legislature to create municipal corporations of this character, said:

"In providing for the welfare of the state and its several parts, the legislature may pass laws affecting the people of the entire state, or, when not restrained by constitutional provisions, affecting only limited portions of the state. It may make special laws relating only to special districts, or it may legislate directly upon local districts, or it may intrust such legislation to subordinate bodies of a public character. It may create municipal organizations or agencies within the several counties, or it may avail itself of the county or other municipal organizations for the purposes of such legislation, or it may create new districts embracing more than one county, or parts of several counties, and may delegate to such organizations a part of its legislative power, to be exercised within the boundaries of said organized districts, and may vest them with certain powers of local legislation, in respect to which the parties interested may be supposed more competent to judge of their needs than the central authority. * * * In a state as diversified in character as California, it is impossible that the same legislation should be applicable to each of its parts. Different provisions are as essential for those portions whose physical characteristics are different, as are needed in the provisions which are made for the government of town and country. Those portions of the state which are subject to overflow, and those which require drainage as well as those which for the purpose of development require irrigation, fall equally within the purview of the legislature, and its authority to legislate for the benefit of the entire state or for the individual district."

It follows that the defendant, having been organized and continuing to exist under a constitutional law of the state, is a public municipal corporation known to the law, and is therefore a de facto corporation, and its officers de facto officers. What is the status of such a corporation under the laws of this state, where the legality of its organization is questioned? Section 358 of the Civil Code of California provides:

"The due incorporation of any company, claiming in good faith to be a corporation under this part, and doing business as such, or its right to exercise corporate powers, shall not be inquired into, collaterally, in any private suit to which such de facto corporation may be a party; but such inquiry may be had at the suit of the state on information of the attorney-general."

In Quint v. Hoffman, 103 Cal. 506, 37 Pac. 514, the action was commenced by the plaintiff to enjoin the defendant, as collector of Central irrigation district, from selling any lands of the plaintiff, and of others similarly situated, for assessments levied in the year 1892. A temporary injunction was issued upon the filing of the complaint, which was subsequently dissolved upon the ground that the facts stated therein were not sufficient to entitle the plaintiff to the relief demanded, and thereupon an appeal was taken from the order of dissolution. In the supreme court the organization of the district was assailed by the plaintiff, and it was insisted that the validity of that organization could be attacked collaterally in the proceedings by showing that the board of supervisors acted without their jurisdiction in effecting its organization. The court held that this position could not be maintained, and said:

"Corporations organized under the act of the legislature popularly known as the 'Wright Act' being public corporations, it is immaterial whether they be corporations de jure or de facto. That is a matter which cannot be inquired

into upon a collateral attack; and in a case like the·present, where the validity of an assessment levied by such a corporation is the subject of litigation, the validity of such assessment does in no way rest upon the fact of the de jure character of the corporation. This principle must be considered settled law in this state."

But may not a de facto corporation plead the illegality of its own organization as a defense to an action? In Brandenstein v. Hoke, 101 Cal. 131, 35 Pac. 562, the plaintiff was the holder of certain bonds of a levee district, which were issued and sold for the purpose of securing funds to carry on improvements in such district. A mandate was prayed for, requiring the board of fund commissioners of the district to take certain steps provided in the statute, looking towards the levy and collection of a tax upon the property within the limits of the district, to be applied in liquidation of the principal and interest of plaintiff's bonds. The defense set up by the board of commissioners was that the district was illegally organized, and the court sustained this defense, but placed its decision expressly upon the grounds that section 21 of the act of the legislature passed March 25, 1868 (St. 1867–68, p. 361), under which it was alleged the district had been organized, was unconstitutional and void, and that there was no law under which a corporation similar to the so-called levee district could have been organized; citing Norton v. Shelby Co., 118 U. S. 442, 6 Sup. Ct. 1121. But, as we have seen, in the case at bar the defense is not that the defendant was organized under an unconstitutional law, but that certain proceedings·taken in its organization were irregular and invalid. Moreover, the law itself has been declared constitutional by the highest court of the state, and the defendant has been for several years exercising the functions of a public corporation under color of that law, unchallenged by any proceedings on the part of the state. In Ashley v. Board, 8 C. C. A. 455, 60 Fed. 55, the action was brought against the board of supervisors of the county of Presque Isle, in the state of Michigan, to recover upon certain bonds and coupons issued by the county for the retirement of certain other bonds issued at an earlier date. It was contended on the part of the defense, among other things, that.when the first bonds were issued there was no county of Presque Isle, as the act under which it was claimed the county had been organized had been declared invalid in the case of People v. Maynard, 15 Mich. 463. It was also contended that the obligations in suit were invalid, because they were issued in violation of the constitutional requirement that expenditures of more than $1,000 in any one year should first be sanctioned by a vote of the electors of the county. The circuit court entered a judgment for the defendant, and the plaintiff took the case, on writ of error, to the circuit court of appeals for the Sixth circuit. In that court the entire controversy involved in the case was considered, and, referring to the invalidity of the organization of the county, the court said:

"But inasmuch as it may appear upon a new trial that the organization of the county of Presque Isle took place while there was yet but one township in it, or under other disabling conditions, it seems necessary to consider the case upon that aspect. Assuming that under the doctrine of People v. May-

nard, above referred to, the courts of the United States would be bound to hold that such organization was unlawful and void in its inception, it does not, in our opinion, follow that if the county, assuming it to be valid, went on as such, acquired the capacity to be a county, and exercised for years, with the acquiescence of the state government, the functions and privileges of a county, its status and the validity of its acts are to be tested by such rules as would have been applicable in a direct and prompt challenge by the state when those powers and privileges were assumed. In the latter case, the public interests are best subserved by speedy reformation, and no private interest is harmed. In the former, the public interests have been adjusted to the actual condition of things, and private interests have become settled upon the foundations which local authority has laid, with the consent of the state, whose business it was to interfere and prevent the mischief, if any such were feared. It is a matter peculiarly within the province and duty of the state to watch over and prevent the development of political growths which are likely to be prejudicial to the public interests. When it does not interfere, private individuals are justified in assuming that there is nothing obnoxious in the organization, and that they may treat with it in the character it has assumed."

The court reviews a number of authorities upon the subject where this doctrine has been declared, and says:

"But it is needless to multiply authorities. They are substantially, if not altogether, agreed upon the proposition that when a municipal body has assumed, under color of authority, and exercised for any considerable period of time, with the consent of the state, the powers of a public corporation, of a kind recognized by the organic law, neither the corporation nor any private party can, in private litigation, question the legality of its existence."

In National Life Ins. Co. v. Board of Education of City of Huron, 10 C. C. A. 647, 62 Fed. 778, the action was brought in the circuit court of the United States for the district of South Dakota against the board of education of the city of Huron, in that state, upon 300 coupons cut from 120 bonds issued by the defendant in October, 1890. A judgment was entered for the defendant, and the case was taken to the circuit court of appeals for the Eighth circuit. The defendant raised, among other questions, the validity of its own organization for the year in which the bonds were issued, under article 3, c. 17, of the Compiled Laws of Dakota. The court of appeals, speaking of this defense, said:

"Moreover, in October, 1890, when these bonds were issued, this board of education was, in any event, a de facto corporation, exercising, under article 3, all the powers and functions granted to a corporation legally organized. It was recognized, and its action was acquiesced in, by the state and by the citizens, for at least 18 months; and, as against bona fide purchasers of its bonds, its acts, as a de facto board of education, if within the powers granted to a board legally organized under this law, are binding upon the defendant corporation. It is the province of the state to question, by proper judicial proceedings, its incorporation; not that of a defendant in a private suit, when it has asserted its corporate existence, and incurred liabilities to innocent parties on the faith of it."

The court then quotes from the decision in Ashley v. Board, supra, and refers to the following cases in support of this doctrine: Ralls Co. v. Douglass, 105 U. S. 728, 730; Coler v. School Tp. (N. D.) 55 N. W. 587; Clement v. Everest, 29 Mich. 19; Burt v. Railroad Co., 31 Minn. 472, 18 N. W. 285, 289; State v. Carr, 5 N. H. 367; People v. Maynard, 15 Mich. 463; Fractional School Dist. No. 1 v. Joint Board of School Inspectors, 27 Mich. 3.

In the recent case of Shapleigh v. City of San Angelo, 167 U. S.

646, 17 Sup. Ct. 957, the supreme court of the United States considered this question upon a state of facts that leaves but little upon which to base a defense of a want of legal organization on the part of a de facto corporation to defeat its obligations. In that case the action was brought in the circuit court of the United States for the Western district of Texas to recover a judgment for the amount of certain unpaid coupons for interest on bonds issued by the defendant as a municipal corporation in the state of Texas, styled the "City of San Angelo." The bonds were issued in 1889. The defense was that in 1890 an action was commenced in the district court of the county in which the defendant was situated against certain persons who were exercising and performing the duties, privileges, and functions of a mayor and city council of the city of San Angelo, claiming the same to be a city duly and legally incorporated under the law of the state, and alleging that said city was not legally incorporated, and that said named persons were unlawfully exercising said functions; that such proceedings were thereupon had that in December, 1891, the district court entered a decree ousting the said persons from their said offices, and adjudging that the incorporation of said city of San Angelo be abolished and declared to be null and void. Subsequently the city of San Angelo was again incorporated, and the suit in the circuit court was against the city, as reincorporated, upon the bonds of the prior illegal corporation. The question was as to the legal effect of the disincorporation of the defendant and its subsequent reincorporation, with respect to the bonds in suit. The supreme court, after referring to authorities upon the subject, said:

"The conclusion which is derivable from the authorities cited, and from the principles therein established, is that the disincorporation by legal proceedings of the city of San Angelo did not avoid legally subsisting contracts, and that upon the reincorporation of the same inhabitants, and of a territory inclusive of the improvements made under such contracts, the obligation of the old devolved upon the new corporation. The doctrine successfully invoked in the court below by the defendant—that where a municipal corporation is wholly void ab initio, as being created without warrant of law, it could create no debts and could incur no liabilities—does not, in our opinion, apply to the case of an irregularly organized corporation, which had obtained, by compliance with a general law authorizing the formation of municipal corporations, an organization valid as against everybody, except the state acting by direct proceedings. Such an organization is merely voidable, and, if the state refrains from acting until after debts are created, the obligations are not destroyed by a dissolution of the corporation, but it will be presumed that the state intended that they should be devolved upon the new corporation which succeeded by operation of law to the property and improvements of its predecessor."

The doctrine of this case is the application of the general rule stated in Cooley on Constitutional Limitations (page 254), where the learned author says:

"In proceedings where the question whether a corporation exists or not arises collaterally, the courts will not permit its corporate character to be questioned, if it appears to be acting under color of law, and recognized by the state as such. Such a question should be raised by the state itself, by quo warranto, or other direct proceeding. And the rule, we apprehend, would be no different if the constitution itself prescribed the manner of incorporation. Even in such a case, proof that the corporation was acting as such, under legislative action, would be sufficient evidence of right, as against the state, and private parties could not enter upon any question of regularity."

To this rule the author adds the law of estoppel, as against the state, where the regularity of a corporation has been for years unquestioned. He says:

"And the state itself may justly be precluded, on the principle of estoppel, from raising such an objection, where there has been long acquiescence and recognition."

That the wisdom and justice of this rule have been recognized by the legislature of this state is established by the legislation amending the act of March 7, 1887, providing for certain proceedings to determine the legality of irrigation districts. In the act approved March 16, 1889 (St. Cal. 1889, p. 212), it is provided that the board of directors of an irrigation district organized under the original act—

"May commence a special proceeding in and by which the proceedings of said board and of said district, providing for and authorizing the issue and sale of the bonds of said district, whether said bonds or any of them have or have not then been sold, may be judicially examined, approved, and confirmed."

The act then provides a method of procedure whereby—

"The court shall have power and jurisdiction to examine and determine the legality and validity of and approve and confirm each and all the proceedings for the organization of said district under the provisions of the said act, from and including the petition for the organization of the district, and all other proceedings which may affect the legality or validity of said bonds and the order for the sale and the sale thereof."

Then, directly in line with this clearly-defined policy of the state to fix the legal status and liability of these corporations in dealing with the public, the legislature passed the act of March 20, 1891 (St. Cal. 1891, pp. 142, 144), again amending the original act of March 7, 1887, by adding to section 3 the following:

"And no action shall be commenced or maintained, or defense made, affecting the validity of the organization, unless the same shall have been commenced or made within two years after the making and entering of said order." (Referring to the order of the board of supervisors declaring the irrigation district duly organized.)

These two statutes, taken together, furnished the irrigation district with a plain and speedy method of procedure for determining the legality of the proceedings under which it was brought into existence, and gave to the public dealing with such a corporation the protection of a just and reasonable statute of limitation against the defense that its formation was irregular and its birth illegitimate. These statutes were in entire harmony with the general law upon the subject as declared by the authorities which have been cited. But it is contended on the part of the defendant that the statute of limitation cannot be interposed in this case, because more than two years from the date of the organization of the district in 1887 had elapsed before the passage of the act of 1891, thus taking away by legislation an existing right of defense. The statute will not be so construed. This was decided in Sohn v. Waterson, 17 Wall. 596, where it was determined that, in construing a statute of limitations, it must, so far as it affects rights of action in existence when the statute is passed, be held, in the absence of a contrary provision, to begin when the cause of action was first subject to its operation.

Under this rule, the defendant had the full period of two years after the passage of the act of March 20, 1891, in which to test the legality of its organization.

The defendant further calls attention to the repeal of the act of March 7, 1887, and acts amendatory thereof, by the act of March 31, 1897 (St. Cal. 1897, p. 254), and contends that, as this limitation of two years is no longer in existence, it cannot now be pleaded as a bar to the defense set up in the answer. The answer to this objection is that no contract, obligation, lien, or charge incurred by an irrigation district under the first act was affected, impaired, or discharged by any of the provisions of the second act, but, on the contrary, such liabilities were expressly continued by the saving clauses of section 109 of the latter act. The repeal of the act of March 7, 1887, and its amendments, cannot be held, therefore, to have in any way affected plaintiff's rights under those acts.

But it is not necessary to pursue this question any further. Whether we consider the statutes of this state relating to the organization of irrigation districts as construed by the highest court of this state, or the general law on the subject as established by the authorities, we arrive at the same conclusion,—that the matter set up by the defendant in its first affirmative defense, relating to the organization of the defendant as an irrigation district, does not contain facts sufficient to constitute a defense to the cause of action stated in the complaint. The demurrer to that defense will therefore be sustained.

The defendant, in its second affirmative defense, sets forth the proceedings taken in issuing the bonds of the district in the sum of $800,000, the letting of contracts for the performance of certain work on the canals and property of the district, and the payment for such work in the bonds of the district. The defendant contends that the facts stated render the bonds illegal and void. As the answer denies that the plaintiff purchased, in good faith or for value, and without notice of their dishonor, the bonds to which were attached the coupons in suit, it is clear that this defense ought not to be disposed of on this demurrer. The demurrer to the second affirmative defense, on the ground that it does not state facts sufficient to constitute a defense, will therefore be overruled. The facts stated in this defense are not very clear or certain, but their legal effect can be better determined upon the trial of the case upon the merits. The objection that this defense is unintelligible, ambiguous, and uncertain will be overruled.

The other points raised upon demurrer go to the question of the relevancy of the matter demurred to, and may properly be disposed of upon the motion to strike out portions of the answer, which will now be considered.

In paragraph 45 of the answer, defendant alleges that none of the land comprised within the boundaries of the irrigation district is, or ever has been, arid or desert, and does not require artificial irrigation to make it productive and profitable. The question whether any particular land could be benefited by a system of irrigation is one of fact, and a fact which the legislature has authorized the

board of supervisors of the county where the land is located to determine. In the present case the question was necessarily determined by the board of supervisors of Stanislaus county at the time the district was organized, and, in the absence of any allegation of fraud or bad faith on the part of the board of supervisors, is conclusive. This was determined in Irrigation Dist. v. Bradley, 164 U. S. 112, 17 Sup. Ct. 56. In that case the plaintiff objected to the operation of the act of March 7, 1887, on the ground that it included within its possibilities all lands, no matter how fertile or productive so long as they were susceptible in their natural state of one mode of irrigation from a common source. Plaintiff alleged that his lands were subject to beneficial use without irrigation. The supreme court disposed of this objection in the following language, to be found at page 167, 164 U. S., and page 66, 17 Sup. Ct., of the opinion:

"Assuming, for the purpose of this objection, that the owner of these lands had, by the provisions of the act, and before the lands were finally included in the district, an opportunity to be heard before a proper tribunal upon the question of benefits, we are of the opinion that the decision of such tribunal, in the absence of actual fraud and bad faith, would be, so far as this court is concerned, conclusive upon that question."

There is no allegation of the answer in relation to the organization of the district that makes this question of fact relevant or material to any issue in the case, and the paragraph will be struck out.

In paragraphs 47, 48, 49, 50, and 51, the defendant alleges, in substance, that no benefit has been or will be received by the district from its organization, the sale of the bonds, the construction of irrigation works; that the system of irrigation provided for by the act of the legislature and by the board of directors of the district has been, and is, and will continue to be, very unprofitable and oppressive, and the expense thereof wholly disproportionate to the benefits which have been or ever will be received by the owners of the real property in said district, and impracticable, and destructive of the interests and welfare of the people. These matters were all proper subjects for consideration and determination by the people when they formed the district and proceeded to deal with the public as a corporation, but they are not facts relevant to any issue in this controversy as to the validity of the bonds or coupons in suit.

In paragraphs 53, 54, 55, and 56 of the answer, the defendant alleges that since the pretended organization of the district 28,000 acres of land originally embraced within its boundaries have been illegally excluded by the board of directors of the district, contrary to law and in violation of the rights of the remaining freeholders of the district. The allegations contained in these paragraphs were contained in the first affirmative defense, that the district had not been legally organized. They are repeated here as part of the affirmative matter set up in the defense that the bonds were not legally issued. In considering this part of the first defense, the decision of the supreme court of the state in the case of Board v. Tregea, 88 Cal. 334, 26 Pac. 237, was referred to as holding that the act of March 7, 1887, as amended by the act of February 16, 1889, was constitutional. The case may again be referred to upon the question as to

whether these allegations relating to the change of the boundaries of the district are material to the defense now under consideration. The plaintiff in that case is the defendant here, and the proceedings which were the subject of inquiry in that case (relating to the exclusion of 28,000 acres of land from the district) are the identical proceedings set up in this defense. The judgment of the supreme court affirming the judgment of the court below in that case, confirming the proceedings, is, of course, not controlling on this court at this time, whatever may be its relevancy or effect hereafter, if offered or introduced in evidence in support of a claim that the action of the board of directors of the district upon any matter involved is res judicata. The case is now merely referred to as indicating the law of the state upon the question whether the proceedings relating to the exclusion of land from the district is material to this defense. The court in its opinion referred to the act of the legislature approved February 16, 1889 (St. 1889, p. 21), which authorizes and prescribes the procedure for the exclusion of lands from an irrigation district, and requires that, if there be any outstanding bonds of the district, no order of exclusion can be made without the consent in writing of the holders of such bonds, acknowledged as deeds of conveyance are required to be acknowledged. It was, contended that there were outstanding bonds of the district at the time the petition for exclusion was filed, and during the greater portion of the time that the notice of the hearing was being published, and that no written consent of the holders of said bonds was ever given to the making of the order. The supreme court found that the evidence established the fact that there were no outstanding bonds of the district at the date of the order of exclusion, and determined that the superior court had committed no error in decreeing the validity of the order of exclusion. The court, however, went further, and held that the validity or invalidity of the order of exclusion did not affect the order for the issuance and sale of bonds,—in other words, whether the order of exclusion was legal or not, it was immaterial in determining the validity of the order providing for the issuance and sale of bonds. In arriving at this conclusion the court probably had in mind the doctrine that a municipal corporation, by merely changing its name or government, or by abridging or enlarging its territory, cannot so destroy its identity as to impair the rights of creditors of the original corporation in the enforcement of obligations against the corporation in its changed condition. This was held, in Bates v. Gregory, 89 Cal. 387, 26 Pac. 891, where the question arose with respect to a change in the territory and government of the city of Sacramento; the court citing as authority Port of Mobile v. U. S., 116 U. S. 289, 6 Sup. Ct. 398. In that case—

"The city of Mobile, under its corporate name, 'The Mayor, Aldermen, and Common Council of the City of Mobile,' had issued certain bonds in 1859. In 1879 the legislature passed two acts,—one entitled 'An act to vacate and annul the charter and dissolve the corporation of the city of Mobile, and to provide for the application of the assets thereof in discharge of the debts of said corporation,' and another entitled 'An act to incorporate the port of Mobile, and to provide for the government 'thereof.' The territory embraced in the port of Mobile was about one-half that which was formerly embraced in the city of

Mobile, but included the larger portion of the inhabitants and taxable property of the former corporation. In an action brought against the port of Mobile to recover upon the bonds that had been issued by the former municipality, the court held that the port of Mobile was the legal successor of the city of Mobile, and liable for its debts, saying: 'Where the legislature of a state has given a local community, living within designated boundaries, a municipal organization, and by a subsequent act or series of acts repeals its charter and dissolves the corporation, and incorporates substantially the same people as a municipal body under a new name, for the same general purpose, and the great mass of the taxable property of the old corporation is included within the limits of the new, and the property of the old corporation used for public purposes is transferred without consideration to the new corporation for the same public uses, the latter, notwithstanding a great reduction of its corporate limits, is the successor in law of the former, and liable for its debts; and, if any part of the creditors of the old corporation are left without provision for the payment of their claims, they can enforce satisfaction out of the new.'"

This is also the doctrine in the recent case of Shapleigh v. City of San Angelo, 167 U. S. 646, 17 Sup. Ct. 957.

It follows from these authorities that the allegations contained in paragraphs 53, 54, 55, and 56 of the answer are immaterial and irrelevant, and should be struck out.

The remaining paragraphs of the second affirmative defense, namely, a portion of paragraph 29 and the whole of paragraph 46, to which the motion to strike out is directed, are objected to as presenting only issues of law. Standing alone, these averments of the answer are subject to that objection, but, read in connection with the other allegations respecting the proceedings taken in issuing the bonds of the district, they may serve the purpose of directing the attention of the court to the particular constitutional provisions which it is claimed have been violated in the proceedings. The motion to strike out the matter here indicated will therefore be denied. Let an order be entered in accordance with this opinion.