| 89 | 387 |
| 93 | 419 |
| 89 | 387 |
| 116 | 523 |
| 89 | 387 |
| 117 | 8 |
| 117 | 202 |
| 89 | 387 |
| 132 | 598 |
| 89 | 387 |
| 139 | 408 |

[No. 13168.   In Bank. — June 1, 1891.]

## GEORGE E. BATES, APPELLANT, v. EUGENE J. GREGORY ET AL., RESPONDENTS.

CONSTITUTIONAL LAW — OBLIGATION OF CONTRACTS — PREVENTION OF
   REMEDY. — An act of the legislature destroying the legal remedy upon
   a contract lawfully made, and binding upon the parties to it, impairs the
   obligation of the contract, within the meaning of the constitution, and is
   void.
ID. — MUNICIPAL CORPORATIONS — RIGHT TO SUE AND BE SUED — BONDS
   OF CITY OF SACRAMENTO — CONSTRUCTION OF CONTRACT. — The provisions
   of the act of March 26, 1851, entitled " An act to incorporate the city of
   Sacramento," providing that the body politic then created might "sue
   and be sued in all courts and in all actions whatsoever," entered into and
   made a part of the contract of the municipality in the issuance of bonds

under the acts of April 26, 1853, and April 10, 1854, providing for the issuance by the city of Sacramento of city bonds, and the legislature could not thereafter, without impairing the obligation of the contract, pass any act which would deprive a holder of the bonds of the right to sue the maker.

ID. — STATUTORY PROHIBITION — SUSPENSION OF RIGHT OF ACTION — STATUTE OF LIMITATIONS. — If it was the intention of the legislature by the act of May 1, 1858, providing that the city and county of Sacramento should not be sued in any action or its property subject to any process whatever, and the act of April 25, 1863, providing for the incorporation of the city of Sacramento, to prevent the institution of any action against the municipality upon city bonds issued under the acts of April 26, 1853, and April 10, 1854, the latter acts would be unconstitutional and beyond the power of the legislature to enact, and could not therefore operate to suspend the right of action against the city, so as to extend the period for the running of the statute of limitations upon the bonds by reason of a statutory prohibition.

ID. — PRESUMPTION AGAINST UNCONSTITUTIONALITY OF STATUTE. — It is not to be presumed that the legislature intended to do anything unconstitutional, and in the absence of an express provision in the act of 1858 preventing the institution of an action upon the city bonds of Sacramento, issued under the acts of 1853 and 1854, it will not be presumed that it was so intended.

ID. — POWER OF LEGISLATURE — CHANGING NAME AND GOVERNMENT OF MUNICIPAL CORPORATION — ENLARGING TERRITORY — RIGHTS OF CREDITORS — SACRAMENTO — ACTION UPON BONDS. — The legislature cannot, by merely changing the name or government of a municipal corporation, or by abridging or enlarging its territory, so destroy its identity as to impair the rights of its creditors to the enforcement of their obligations against the original corporation, and the fact that the corporation of " the city and county of Sacramento " created by the act of April 24, 1858, was different in territory as well as in government from the corporation of the " city of Sacramento " which had issued the bonds, and of which it was the legal successor, did not of itself prevent an action upon the bonds against the maker; and the city and county of Sacramento, being the successor of the city of Sacramento under the acts of 1858 and 1863, was liable to be sued upon the bonds issued by the city.

CITY OF SACRAMENTO — ACT FOR BONDING OF INDEBTEDNESS — BONDS BARRED BY LIMITATION — ISSUANCE OF NEW BONDS. — The act of March 22, 1864, providing that the holders of all claims against the city of Sacramento which accrued prior to January 1, 1859, might present the same to the board of trustees, and that the said board should cause to be issued bonds payable February 1, 1903, for all such claims as they might consider legal and just, was not intended to extend the time for refunding the indebtedness of the city beyond the time within which an action upon that indebtedness could have been commenced, and a failure of the holder of bonds issued under the acts of April 26, 1853, and April 10, 1854, to present them to the board and demand the issuance of new bonds in their place, until after they had become barred by the statute

of limitations, gave the board the right of refusing to issue the new bonds.

MUNICIPAL CORPORATIONS — IDENTITY — CHANGE OF CHARTER. — A municipal corporation does not lose its identity or become relieved from its liabilities by any change in its charter, or by the substitution of a new charter in place of the old one, unless there is an express legislative declaration to that effect.

ID. — DEFENSE OF STATUTE OF LIMITATIONS. — A municipal corporation has the legal right to avail itself of the defense of the statute of limitations as fully as any other creditor.

ID. — PERSONAL PRIVILEGE OF DEBTOR. — The defense of the statute of limitations is a privilege personal to the debtor, and whenever in any legal proceeding it is invoked by the debtor, the court is compelled to recognize it as a defense.

APPEAL from a judgment of the Superior Court of Sacramento County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*A. C. Freeman,* and *W. C. Belcher,* for Appellant.

*A. P. Catlin,* for Respondents.

HARRISON, J.—This was an application for a writ of mandate to compel the defendants, as trustees of the city of Sacramento, to issue to the petitioner new bonds of the city, in accordance with the provisions of the act of March 22, 1864, in exchange for unpaid bonds held by him, that had been issued under the provisions of the acts of April 26, 1853, and April 10, 1854.

The city of Sacramento was incorporated by the act of the legislature passed March 26, 1851, entitled "An act to incorporate the city of Sacramento." (Stats. 1851, p. 391.)  The government of the city was vested in a mayor, recorder, and council, and by section 3 of the act it was declared that "the said mayor, recorder, and councilmen shall be a body politic and corporate by the name and style of the ' Mayor and Common Council of the City of Sacramento,' and by that name they and their successors shall be known in law, have perpetual

succession, sue and be sued in all courts and in all actions whatsoever." By the act of April 26, 1853 (Stats. 1853, p. 117), authority was given to the municipality to create loans upon the faith and credit of the city, at the discretion of the city council. Under the provisions of this act the mayor and common council of the city of Sacramento issued a certain bond, dated the sixth day of May, 1854, for the sum of $544.45, payable on the first day of July, 1874, with forty semi-annual coupons attached, for $27.22 each. By another act, passed April 10, 1854 (Stats. 1854, p. 196), the mayor and common council of the city of Sacramento were authorized to issue city bonds payable twenty years from the first day of July, 1854, and drawing interest at ten per cent per annum. Under the provisions of this act two bonds for the sum of one thousand dollars each were issued by the mayor and common council of the city of Sacramento, dated respectively the twenty-fourth and twenty-sixth days of April, 1854, made payable on the first day of July, 1874, and to each there were attached forty semi-annual coupons of fifty dollars each. April 24, 1858, the legislature passed an act, to take effect May 1, 1858, consolidating the city of Sacramento with the county of Sacramento, under the name and style of "The City and County of Sacramento." (Stats. 1858, p. 267.) Section 2 of this act declares that "the city and county of Sacramento is hereby made and constituted the successor of the corporation by this act dissolved, and heretofore known as 'The Mayor and Common Council of the City of Sacramento.' The lands, public and private buildings, property, rights of property, actions, rights of actions, moneys, revenues, income, and trusts, now vested in or belonging or in any wise appertaining to the corporation known as 'The Mayor and Common Council of the City of Sacramento,' are hereby transferred to and vested in and are declared to appertain and belong to the city and county of Sacramento as hereinafter pro-

vided." It was also provided in said act that the city
and county should not be sued in any action whatever,
nor should any of its lands, buildings, improvements,
property, franchises, taxes, revenues, actions, choses in
actions, and effects be subject to any attachment, levy, or
sale, or any process whatever, either mesne or final.
April 25, 1863, the legislature passed an act entitled
" An act to incorporate the city of Sacramento " (Stats.
1863, p. 415), by which the inhabitants of the terri-
tory embraced within the limits of the city of Sacra-
mento as defined in the act of March 26, 1851, were
made a body politic, under the name and style of the
" City of Sacramento." By this act the lands, tene-
ments, hereditaments, moneys, and property which on
April 30, 1858, were vested in or held by " the mayor
and common council of the city of Sacramento," and
such as had since that date been derived or acquired
within the described city limits for municipal purposes,
or with municipal funds, were transferred to this new
corporation. The government of the city was vested in
a board of three trustees, and it was provided by the
act that the body politic might sue and be sued and
defend upon any bond, covenant, agreement, contract,
matter, or thing whatever, provided such bond, agree-
ment, contract, or thing that is the cause of action had
been made or entered into after the passage of that act.
On the 22d of March, 1864, the legislature passed "an
act to provide for the liquidation of the indebtedness of
the city of Sacramento which accrued prior to January
1, 1859." (Stats. 1864, p. 217.) By this act it was
provided that the holders of all claims against the city
of Sacramento which accrued prior to the first day of
January, 1859, might present the same to the board of
trustees, and that the said board should cause to be
issued bonds payable to bearer on the first day of Feb-
ruary, 1903, for all such claims as they might upon ex-
amination consider legal and just.

The plaintiff, having become the owner of the three bonds mentioned above, made a demand on the 17th of October, 1887, upon the board of trustees of the city of Sacramento, that it issue to him bonds as contemplated by this last-named act for the amount of the principal of said bonds, and for all of the coupons thereon which matured on or before January 1, 1859. Upon the refusal of the board to issue him the bonds as demanded, he commenced this proceeding to compel the same. The court before which the cause was tried found that the petitioner's claim was barred by the statute of limitations, and rendered judgment in favor of the defendant, from which the plaintiff has appealed.

By the terms of the bonds they matured on the first day of July, 1874, and consequently would be barred by limitation on the first day of July, 1878, unless, as claimed by appellant, the statute of limitations has no application. The appellant, however, contends that the statute of limitations is not applicable, for the reason that by the provisions of the act of 1858 incorporating "the city and county of Sacramento," and also of the act of 1863 incorporating the "city of Sacramento," hereinabove mentioned, he was prevented from bringing any action to enforce their collection, and invokes the provisions of section 356 of the Code of Civil Procedure, which declares: "When the commencement of an action is stayed by injunction or statutory prohibition, the time of the continuance of the injunction or prohibition is not part of the time limited for the commencement of the action." He also urges that inasmuch as the act of March 22, 1864, above mentioned, does not limit the time within which an application for refunding under its terms may be made, the statute of limitations has no application.

The provision in the act of March 26, 1851, that the body politic then created might "sue and be sued in all courts and in all actions whatsoever," entered into and

made a part of the contract of the municipality in the issuance of the bonds in question. The legislature could not thereafter, without impairing the obligation of this contract, pass any act which would deprive a holder of these bonds of the right to sue their maker. This principle is so familiar and so fully settled as hardly to require the citation of authorities. It was said by the supreme court of Massachusetts, in *Call* v. *Hagger*, 8 Mass. 430: "If the legislature of any state were to undertake to make a law preventing the legal remedy upon a contract lawfully made and binding on the party to it, there is no question that such legislature would by such act exceed its legitimate powers. Such an act must necessarily impair the obligation of the contract within the meaning of the constitution, and the courts of law would be bound, therefore, to construe it as a void act of legislation, and as having no force or authority." In *Von Hoffman* v. *City of Quincy*, 4 Wall. 535, the supreme court of the United States, discussing this subject, says: "It is also settled that the laws which subsisted at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as if they were expressly referred to or incorporated in its terms. This principle embraces alike those which affect its validity, construction, discharge, and enforcement." And in the same case the court further says: "Nothing can be more material to the obligation than the means of enforcement. Without the remedy the contract may, indeed, in the sense of the law, be said not to exist, and its obligation to fall within the class of those moral and social duties which depend for their fulfillment wholly upon the will of the individual. The ideas of validity and remedy are inseparable, and both are parts of the obligation which is guaranteed by the constitution against invasion. The obligation of a contract 'is the law which binds the parties to perform their agreement.' The prohibition

has no reference to the degree of impairment; the largest and the least are alike forbidden." (See also *Edwards* v. *Kearzey*, 96 U. S. 595; *People* v. *Bond*, 10 Cal. 563; *Wolff* v. *New Orleans*, 103 U. S. 358.)

If, then, it be admitted that it was the intention of the legislature by the acts aforesaid to prevent the institution of any action against the municipality upon the bonds in question, such act would have been unconstitutional, and beyond the power of the legislature to enact. The legislature has not, in direct terms, declared that no action shall be brought upon these bonds. It is only by an inference drawn from the fact that in the acts of 1858 and 1863 a limitation was imposed upon the bringing of actions against the corporations created by those acts that counsel claim such intention was manifested. It is not to be presumed that the legislature intended to do anything unconstitutional or beyond its power; and if such limitation would have been unconstitutional, we must assume, in the absence of an express provision to that effect, that it was not intended.

The fact that the corporation which was created by the act of April 24, 1858, was different in territory as well as in government, did not of itself prevent an action from being brought against the maker of the bonds. Before the bonds had matured the legislature passed the act of April 25, 1863, by which the inhabitants of the same territory which was embraced in the original act of March 26, 1851, were reincorporated and vested with the same property and rights which the mayor and common council of the city of Sacramento had possessed prior to the taking effect of the act of April 24, 1858. By the act of April 24, 1858, the city and county of Sacramento was made and constituted the "successor" of the corporation theretofore known as the mayor and common council of the city of Sacramento, and by the act of April 25, 1863, all the property that "the city and county of Sacramento" had received from the mayor

and common council of the city of Sacramento as the "successor" of that municipality was transferred to and vested in the new "city of Sacramento," which thus became the legal "successor" of the corporation which had issued the bonds.

The legislature cannot, by merely changing the name of a municipal corporation, or by abridging or enlarging its territory, so destroy its identity as to impair the rights of its creditors to the enforcement of their obligations against the original corporation. It has been held that where a public corporation has been absolutely dissolved without making any provision for its obligations, and where no successor is created, a creditor of such corporation has only the faith of the legislature upon which to rely for payment thereof. (*Barkley* v. *Levee Comm'rs,* 93 U. S. 258.) It is also an established principle that a corporation does not lose its identity or become relieved from its liabilities by any change in its charter, or by the substitution of a new charter in place of the old one, unless there is an express legislative declaration to that effect. This rule was applied in *Broughton* v. *Pensacola,* 93 U. S. 266. The city of Pensacola had issued certain bonds, and had thereafter, by virtue of certain statutes, ceased to exist under its original act of incorporation. The inhabitants of the territory within which the city had been organized subsequently established a municipal government under the provisions of the laws of that state, and the payment of these bonds was resisted upon the ground that the new corporation was not responsible for them. The court, however, held that the payment of the bonds could be enforced against the new corporation, saying: "The inhibition which preserves against the interference of a state the sacredness of contracts applies to the liabilities of a municipal corporation created by its permission, and although the repeal or modification of the charter of a corporation of that kind is not within the inhibition,

yet it will not be admitted, where its legislation is susceptible of another construction, that the state has in this way sanctioned an evasion of or escape from liabilities the creation of which it authorized. When, therefore, a new form is given to an old municipal corporation, or such a corporation is reorganized under a new charter, taking in its new organization the place of the old one, embracing substantially the same corporators and the same territory, it will be presumed that the legislature intended a continued existence of the same corporation, although different powers are possessed under the new charter, and different officers administer its affairs; and in the absence of express provision for their payment otherwise, it will also be presumed in such case that the legislature intended that the liabilities as well as the rights of property of the corporation in its old form should accompany the corporation in its reorganization."

In *Mobile* v. *Watson*, 116 U. S. 289, the city of Mobile under its corporate name, "The Mayor, Aldermen, and Common Council of the City of Mobile," had issued certain bonds in 1859. In 1879 the legislature passed two acts, one entitled "An act to vacate and annul the charter and dissolve the corporation of the city of Mobile, and to provide for the application of the assets thereof in discharge of the debts of said corporation," and another, entitled "An act to incorporate the Port of Mobile, and to provide for the government thereof." The territory embraced in the Port of Mobile was about one half that which was formerly embraced in the city of Mobile, but included the larger portion of the inhabitants and taxable property of the former corporation. In an action brought against the Port of Mobile to recover upon the bonds that had been issued by the former municipality, the court held that the Port of Mobile was the legal successor of the city of Mobile, and liable for its debts, saying: "Where the legislature of a state has

given a local community, living within designated boun-
daries, a municipal organization, and by a subsequent act
or series of acts repeals its charter and dissolves the cor-
poration, and incorporates substantially the same peo-
ple as a municipal body under a new name, for the same
general purpose, and the great mass of the taxable prop-
erty of the old corporation is included within the limits
of the new, and the property of the old corporation used
for public purposes is transferred without consideration
to the new corporation for the same public uses, the lat-
ter, notwithstanding a great reduction of its corporate
limits, is the successor in law of the former, and liable
for its debts; and if any part of the creditors of the old
corporation are left without provision for the payment
of their claims, they can enforce satisfaction out of the
new." (See also *Amy* v. *Selma,* 77 Ala. 103; *Milner's
Adm'r* v. *Pensacola,* 2 Woods, 632; *Hill* v. *City of Kahoka,*
35 Fed. Rep. 32; *Amy* v. *Watertown,* 130 U. S. 320.)

We are of the opinion that the holder of the bonds in
question has at no time since the first day of July, 1874,
been prevented by a "statutory provision" from bringing
an action to recover the amount of the bonds, and also
that the corporations which were created by the acts of
1858 and 1863 were respectively in law the successor
of the corporation that issued the bonds, and liable to be
sued thereon.

It could not have been the intention of the legislature,
by the act of March 22, 1864, to extend the time for re-
funding the indebtedness of the city beyond the time
within which an action upon that indebtedness could
have been commenced.  At the date of that act, more
than ten years remained before the maturity of the
bonds in question.  The bonds held by the petitioner
had no fund provided for their redemption, but were
dependent solely upon the faith and credit of the city.
The act of 1864 gave to the holder of these bonds the
privilege of exchanging them for other bonds bearing a

lower rate of interest, but secured in their payment by the fund provided therein for their redemption. An option was thus extended to the holder of such bonds to make the exchange, and this option could be exercised at any time during the life of the bonds. A failure on his part to present them to the board of trustees, and demand the issuance of new bonds in their place, until after they had become barred by the statute of limitations, would give to the board the right, if they chose to exercise it, of refusing to issue new bonds therefor upon this ground. A municipal corporation has the legal right to avail itself of the defense of the statutes of limitations as fully as any other creditor. It is a privilege personal to the debtor, and whenever, in any legal proceeding, it is invoked by the debtor, the court is compelled to recognize it as a proper defense. This defense is pleaded in the present proceeding, and, as we have before shown, is sustained by the facts, and must therefore be held sufficient.

The judgment and order appealed from are affirmed.

DE HAVEN, J., SHARPSTEIN, J., GAROUTTE, J., and PATERSON, J., concurred.

McFARLAND, J., concurred in the judgment.

BEATTY, C. J., being disqualified, took no part in the foregoing decision.