(November 30, 1910.)

## CHARLES MIX, Appellant, v. THE BOARD OF COUNTY COMMISSIONERS OF NEZ PERCE COUNTY, Respondent.

[112 Pac. 215.]

LOCAL OPTION LAW—CITY CHARTER—AMENDMENT OF—INTOXICATING LIQUORS — AUTHORITY TO REGULATE — CITY COUNCIL — CONSTITUTIONAL LAW—SPECIAL ACT—GENERAL LAW.

(Syllabus by the court.)

1. Under the provisions of the constitution, the special charter of the city of Lewiston may be amended by a special law enacted for that specific purpose, or by a general law which declares a state policy concerning police regulations or in regard to matters affecting the state at large.

2. Ordinances providing for the pavement of streets, construction of sewers and levying assessments to pay therefor are matters of local concern, and the special charters of the cities of this state in regard to such local matters can be amended only by special law.

3. *Boise City National Bank v. Boise City*, 15 Ida. 792, 100 Pac. 93, cited and distinguished.

4. Whenever the legislature enacts a general law declaring a state policy in regard to the prohibition of gambling or the regulation of the sale of intoxicating liquors, such law supersedes any special charter rights that cities within the state have been given in regard thereto.

5. *In re Ridenbaugh*, 5 Ida. 377, 49 Pac. 12, cited and approved.

6. Special charter cities cannot by ordinance make acts lawful that are made criminal by the general law of the state.

7. The law known as the local option law (Sess. Laws 1909, p. 9), *held* to be a general law declarative of the policy of the state in regard to traffic in intoxicating liquors.

8. A special law is one that applies only to a special locality or to an individual or to a number of individuals selected out of a class to which they belong.

9. A general law is one framed in general terms, restricted to no locality and operating upon all alike.

10. Sec. 7 of the local option law prohibits the board of county commissioners of any county where said law has been adopted from granting any person, firm, association, corporation or club a license to sell or dispose of intoxicating liquors within such county.

11. Under the provisions of sec. 63 of the special charter of the city of Lewiston, said city is prohibited from issuing a license authorizing anyone to do any act or engage in any business which is made unlawful by the general laws of the state.

12. The phrase "law of the land" as used in said section includes the general laws of the state.

13. The legislature by enacting the special charter of the city of Lewiston did not delegate to said city the authority to license persons to sell intoxicating liquors within such city contrary to the general law of the state.

14. When the general law prohibits or makes a certain business criminal, the city cannot make such business lawful by licensing it.

APPEAL from the District Court of the Second Judicial District, for Nez Perce County. Hon. Edgar C. Steele, Judge.

Proceeding in the district court for a writ of mandate to the board of county commissioners to compel them to issue a license to petitioner authorizing him to engage in the business of retailing intoxicating liquors in the city of Lewiston. Writ denied and judgment of dismissal entered. *Affirmed.*

Chas. L. McDonald, and Eugene A. Cox, for Appellant.

If any specific question, which is not plainly and exclusively local, is deemed by the legislature to be a proper subject for the announcement of a state policy, by a general criminal law, universally applicable throughout the state, then such question is thereby withdrawn from the jurisdiction and control of the local governments, at least to the extent that they

cannot nullify the state's policy, or promulgate a contrary rule, and the law declared by the legislature is the universal rule within the state, and supersedes all special acts and the regulations of the local authorities thereunder. (*In re Rid-enbaugh*, 5 Ida. 371, 49 Pac. 12.)

On the other hand, where the legislature refuses to declare a universal policy for the whole state in regard thereto, or where the subject matter treated is one necessarily of local concern, and the legislature is merely formulating the agencies, instrumentalities and procedure by which the matter may be handled by the local authorities, then, in such case, the legislature by its own act classes the subject treated as one of local concern, and being a matter of local concern, the method of amending the charter by specific act is pointed out by the constitution, and constitutes a limitation upon the power of the legislature. (*Boise City Nat. Bank v. Boise City*, 15 Ida. 792, 100 Pac. 93.)

Under the 1907 charter the city was given complete power over the liquor traffic, and by the initiative and referendum clauses was created an independent local option district, and the first local option election in Idaho was held under the charter prior to the passage of the general local option law and prohibition was defeated. The general local option law contains no reference to the special charter, and the question therefore arises as to whether the later general act will repeal the earlier special law. (*State ex rel. St. Paul Gas Light Co. v. McCardy*, 62 Minn. 509, 64 N. W. 1133; *Pierce County v. Spike*, 19 Wash. 652, 54 Pac. 41; *Seattle M. & Ry. Co. v. O'Meara*, 4 Wash. 17, 29 Pac. 835; *University of Utah v. Richards*, 20 Utah, 457, 59 Pac. 96; *Atchison T. & S. F. R. Co. v. Haynes*, 8 Okl. 576, 58 Pac. 738; *People v. Pac. Imp. Co.*, 130 Cal. 442, 62 Pac. 739; *Banks v. Yolo County*, 104 Cal. 258, 37 Pac. 900; *State v. Sturgess*, 10 Or. 58; *In re Murdock*, 149 Pa. 341, 24 Atl. 222; *State v. Linquist*, 77 Minn. 540, 80 N. W. 701; *Territory v. Evans*, 2 Ida. 651, 23 Pac. 232, 7 L. R. A. 646; *Boise City National Bank v. Boise City*, 15 Ida. 792, 100 Pac. 93.)

Art. 12, sec. 1 of the Idaho constitution was adopted from art. 11, sec. 6 of the California constitution of 1879, but in adopting this clause our constitutional convention struck out the phrases providing that the special charter cities should be subject to general laws, and modified our art. 11, sec. 2, and art. 3, sec. 19, which were also taken from the California constitution, thus leaving the special charter cities subject only to the operation of such general laws as must apply to them by *necessary implication.*

In Idaho the first cities were mining towns, remote from any central authority. They assumed of necessity large powers of self-government, and the legislature and people of the state came to regard this local independence as naturally right. In theory, through the medium of special acts, they were subject to almost unrestrained legislative power. In practice, no special charter has ever been amended in the history of the territory or state except at the request of the people living under it. From the earliest days these cities were clearly set apart as local independent governments. (Charter of 1863, art. 7, secs. 8 and 9; Washington Ter. Sess. Laws, Local and Private Laws, p. 51; Charter of 1881, chap. 2, sec. 26, Ida. Sess. Laws 1881, p. 390; Charter of 1903, sec. 57, Sess. Laws 1903, p. 126; Charter of 1907, sec. 233, Sess. Laws 1907.)

The constitution perpetuated the relations already established. The charter cities were exempted from general laws and the medium of amendment by special laws was preserved. This court has held that the legislature cannot even *supplement* the charters by general laws relating to local government. (*Boise City National Bank v. Boise City, supra.*)

The local option law is merely a statute general in form but dealing with matters adjudged by the legislature at the present time to be local. There is no express power in the constitution to enact laws like the local option law. It clearly belongs to that large class of legislation based upon principles of local self-government, to which class also belong laws like the Herd District Law, Irrigation District and Road District

Laws, Rural High School Laws and laws relating to cities, precincts, or other local governments. (Cooley's Con. Lim., 7th ed., pp. 65, 173, 174, 243, 263, 264; Freund, Police Power, sec. 217, p. 205; *Feek v. Township Board,* 82 Mich. 393, 47 N. W. 37, 10 L. R. A. 69; *State v. Noyes,* 30 N. H. 279–292.)

The power of the legislature to amend the charter of Lewiston by special act is an express constitutional power. The power of the legislature to supersede the charter powers by a general state law is *implied.*

Where a question is adjudged by the legislature to be local, no state policy is involved, and necessarily no implication of the legislative power to amend the city charter arises.

If the legislature can deprive the city of Lewiston of its charter power to license the sale of intoxicating liquors by a local option law, it can, in like manner, deprive the city of its charter power to prevent animals from running at large by a county herd district law, or abolish the city's police by a system of county police, as was done at one time in New York and Philadelphia, or deprive the city of its control of its streets by a county good roads district law, and thus the legislature may be permitted by indirection, and, perhaps, even without intent, to accomplish what is expressly forbidden by the constitution.

It may be contended that the local option law expresses a policy of the state to submit this matter to the counties for determination. The decision to submit it at all involves a previous determination that it is a local question. It is also a question with which the special charter cities are expressly empowered to deal. There can, therefore, be no state policy of encroachment upon these local charter powers. The state may constitutionally declare that a certain subject shall no longer be a matter of local regulation. It cannot under the constitution declare that a certain subject of local regulation embraced within the charter of Lewiston shall be taken out of the control of the people of that city and decided by the people of Nez Perce county.

The only constitutional protection which the special charter cities have is exemption from general laws. (*Ex parte*

*Braun,* 141 Cal. 204, 74 Pac. 780; *Ex parte Helm,* 143 Cal. 553, 77 Pac. 453; *City of Los Angeles v. Independent Gas Co.,* 152 Cal. 765, 93 Pac. 1006; *Ex parte Diehl,* 8 Cal. App. 51, 96 Pac. 98.)

D. C. McDougall, Atty. Gen., D. E. Hodge, County Atty. of Nez Perce County, J. H. Peterson, and O. M. Van Duyn, for Respondent.

It appears from sec. 63 of the Lewiston charter that the city was never granted the absolute power to regulate its own saloons without reference to the law of the state. The local option law, therefore, could not be construed as an amendment to this city charter, because the state has always reserved in itself the ultimate right to govern the liquor traffic. It has never vested this power exclusively in the municipalities of the state.

The argument of counsel based upon the case of *Boise National Bank v. Boise City,* 15 Ida. 792, 100 Pac. 93, is not in point. In that case, there being purely a local question involved, the court held that a special charter could not be amended by a general act. But even if it be granted, for the sake of argument, that the local option law, if made to apply to a special charter city, operates as an amendment of its charter, yet the state has the right to pass a general law in certain instances modifying or amending special charters.

Sec. 2, art. 12 of the constitution prohibits the making and enforcing of an ordinance in conflict with the general law. (*In re Ridenbaugh,* 5 Ida. 371, 49 Pac. 12.)

The local option law is a general law. (*Gillesby v. Board of Commissioners,* 17 Ida. 586, 107 Pac. 71.)

The intent of the legislature to make the local option law apply to charter cities and other territory within counties which have voted "dry" is made obvious by the language of sec. 7 of the local option statute.

SULLIVAN, C. J.—This appeal involves the judgment and order of the trial court in refusing to grant a writ of mandate to the board of county commissioners of Nez Perce county,

commanding them to issue a license to the appellant, author-
izing him to engage in the business of retailing intoxicating
liquors in the city of Lewiston. The action was brought to
determine the applicability of the local option law to the
territory included in the city limits of Lewiston. It is
alleged in the petition that the city is operating under a
special act or charter; that the petitioner has been engaged
for several years last past in the liquor business in said city,
and that he now holds a license from that city; that he applied
to the county commissioners for a renewal of his county and
state licenses, and that such renewal was refused on the sole
ground that a local option election was held in the county
of Nez Perce on March 9, 1910, at which election the can-
vassers found that the majority of the votes cast were in
favor of the proposition submitted and that the board was
thereby deprived of discretion to issue the license applied for.
A general demurrer was interposed to the complaint or peti-
tion, which was sustained by the court and a judgment of
dismissal was entered. This appeal is from that judgment.

*In limine,* we desire to say that the oral argument of Eugene
A. Cox, of counsel for appellant, which was submitted to the
court in typewriting, shows a great deal of thought, study
and painstaking research, and is a very valuable historical
treatise, and deserves special mention in this opinion. It is
instructive and valuable for its clear and well-reasoned argu-
ment, and it traces the history of special charter cities
from their early existence down to the present time. It is
a splendid production, and ought to be preserved in proper
form for the benefit of anyone who may be interested in that
subject.

The main question presented is: Does the act known as the
local option law (Sess. Laws 1909, p. 9) apply to the city
of Lewiston? It is contended by counsel that sec. 63 of the
special charter of the city of Lewiston (Sess. Laws 1907, p.
349) gives that city the absolute power to regulate or pro-
hibit the sale of intoxicating liquors within said city, and
that the local option law, though adopted by the electors of
the county, can in no manner affect the right of the city to

control the traffic in intoxicating liquors.   Said section 63 is as follows:

"The mayor and council shall have full power and authority: . . . . To license, regulate, restrain and prohibit for cause places where intoxicating beverages are sold, and all offensive and dangerous trades, occupations, employments or businesses, and for the purpose of this act to define what are offensive and dangerous trades, employments, occupations, or businesses; to limit and define the districts within the city within which intoxicating liquors may be sold, and any dangerous or offensive occupation carried on; but this section does not empower the city of Lewiston to declare a trade, employment, occupation or business offensive or dangerous contrary to the common understanding of the subject, nor to authorize anyone to do any act or engage in any business contrary to the law of the land."

In determining the questions involved, the method or manner of amending said special charter under the provisions of the state constitution must be considered.

It appears from the record that the city of Lewiston was created by an act of the legislature of Washington territory in 1863, prior to the creation of Idaho territory, it then being a part of Washington territory. That city's existence was recognized by the territory of Idaho, and its charter was continued in force by sec. 2 of art. 21 of the state constitution, which is as follows:

"All laws now in force in the territory of Idaho which are not repugnant to this constitution shall remain in force until they expire by their own limitation or be altered or repealed by the legislature."

Sec. 1 of art. 12 of the constitution provides for the organization of cities not operating under special charters, as follows:

"The legislature shall provide by general laws for the incorporation, organization and classification of the cities and towns, in proportion to the population, which laws may be altered, amended, or repealed by the general laws. Cities and towns heretofore incorporated, may become organized under

such general laws, whenever a majority of the electors at a general election shall so determine, under such provisions therefor as may be made by the legislature.''

Sec. 2 of art. 11 of the constitution provides as follows:

''No charter of incorporation shall be granted, extended, changed or amended by special law, except for such municipal, charitable, educational, penal or reformatory corporations as are or may be, under the control of the state; but the legislature shall provide by general law for the organization of corporations hereafter to be created; *Provided*, That any such general law shall be subject to future repeal or alteration by the legislature.''

It is contended by counsel for appellant under the provisions of sec. 2, art. 11, of our constitution and the decisions of this court, that the charter of the city of Lewiston can be amended in two ways only: First, by special act for that specific purpose; and, second, by a general criminal law or a law treating a subject matter of proper state control and declarative of a state policy; that the latter method is not express but arises by necessary implication from the nature of state and city government; that cities are organized to deal with local questions, the state with problems and policies of a more general nature; that before this implied method of amending the charter is applicable, it must appear that the legislature has adjudged some subject to be proper for state regulation and has declared a state policy with respect thereto.

We are in accord with that contention of counsel. In *Boise City National Bank v. Boise City,* 15 Ida. 792, 100 Pac. 93, this court had under consideration the authority of that city to construct sewers and to levy assessments for the payment thereof, and to regulate those matters in which the local community alone was interested, and the court there held that the provisions of the city charter must control and not the general law of the state. The court said: ''In the case at bar, it is clear that the construction of sewers and the levying of assessments for the payment therefor are matters of local concern in which the local community is alone interested and in which the state at large has no special interest.'' The

*a*

question presented for decision in that case was whether the provisions of the Boise City charter of 1907 in regard to constructing sewers and assessing the property benefited and collecting from the property owners the cost thereof was the exclusive law by which those things must be done, or whether that charter was supplemented by the act of 1905 (Sess. Laws 1905, p. 113). It will be observed that the Boise City charter of 1907 was re-enacted and amended about two years subsequent to the general law of 1905, which law provided a complete method for building sewers and assessing the property benefited and collecting from the property owners the cost thereof, and applies to cities incorporated under the general law of the state. We held in that case that the special charter of Boise City could not be amended by general law, but that holding was applicable to the facts of that case, and the facts involved were relative to the construction of sewers and the levying of assessments for the payment therefor, and the court there held that that matter was of local concern, in which the state at large had no special interest, and as to those matters the charter could be amended only by special law.

Sec. 2 of art. 12 of the constitution is as follows: "Any county or incorporated city or town may make and enforce, within its limits, all such local, police, sanitary and other regulations as are not in conflict with its charter or with the general laws."

Said section was construed by this court in *Re Ridenbaugh*, 5 Ida. 375, 49 Pac. 12, under the following facts: The city of Boise, operating under a special charter which gave it the right to regulate gambling, licensed Ridenbaugh to operate a gambling game in said city. While he was operating under said license, he was arrested under a general law of the state prohibiting gambling, and as a defense to said action he plead the license granted to him by the city of Boise. The court in passing upon that case said:

"It was not the intention of the legislature or the framers of the constitution to empower the council of incorporated cities and towns to pass ordinances in conflict with the general laws of the state. The cardinal rule in construing constitu-

tional, as well as statutory, provisions, is to discover and enforce the intention of those who made them. . . . . It was not the intention to permit or authorize the councils of incorporated cities to legalize, by ordinance, acts prohibited as criminal by the general criminal laws of the state, or to enforce ordinances in conflict with the general law. In case of a conflict the ordinance must give way. The ordinances authorized by the charter of Boise City must be in harmony with the general laws of the state.''

The real distinction between the case of *Boise City National Bank v. Boise City, supra,* and the Ridenbaugh case, is that the former involved a mere matter of local self-government and the latter a state policy, prohibiting gambling in the state. Special charter cities cannot by ordinance make acts lawful that are made criminal by the general law of the state. Sec. 2, art. 12, of the state constitution prohibits special charter cities from making or enforcing any local, police, sanitary or other regulation that is in conflict with its charter or the general law of the state.

But it is contended that the local option law is not a declaration of a state policy; that it is not a general law; that it is local and special, and applicable only to the counties that adopt it; hence in no manner amends the special charter of the city of Lewiston.

The local option law is made applicable to every county in the state alike, and its provisions become operative in any county upon the electors of such county complying with its provisions and holding an election to determine whether the sale of intoxicating liquors as a beverage shall be prohibited, and if at such election the majority of the electors vote in favor of prohibiting such sale, the law becomes operative in the county as provided by said act.

A special law is one which applies only to an individual or to a number of individuals selected out of the class to which they belong, or to a special locality. (*State v. Cal. Min. Co.,* 15 Nev. 234.) A law may be general, however, and have but a local application, and it is none the less general and uniform because it may apply to a designated class if it operates

equally upon all subjects for which the rule is adopted. In determining whether a law is general or special, the court will look to its substance and necessary operation as well as to its form and phraseology. (*Ladd v. Holmes,* 40 Or. 167, 91 Am. St. 457, 66 Pac. 714; Vol. 7 Words & Phrases, pp. 6578, 6579; Black's Law Dictionary, p. 535, under title "General Law.")

In *People v. Hoffman,* 116 Ill. 587, 56 Am. Rep. 793, 5 N. E. 596, the court had under consideration the question whether a certain law was general or special, and said:

"Whether laws are general or not does not depend upon the number of those within the scope of their operation. They are general, 'not because they operate upon every person in the state, for they do not, but because every person who is brought within the relations and circumstances provided for is affected by the laws.' Nor is it necessary, in order to make a statute general, that 'it should be equally applicable to all parts of the state; it is sufficient if it extends to all persons doing or omitting to do an act within the territorial limits described in the statute.' " (See, also, *Cox v. State,* 8 Tex. App. 254, 34 Am. Rep. 746; *People v. Wright,* 70 Ill. 388.)

In the case of *Paul v. Gloucester Co.,* 50 N. J. L. 585, 15 Atl. 272, 1 L. R. A. 86, the court had under consideration a local option law. The law was attacked on the ground that it was local or special in its application and the court held:

"The law is not in contravention of our constitutional provision that 'the legislature shall not pass private, local or special laws regulating the internal affairs of towns and counties.' This inhibition in the constitution is not intended to secure uniformity in the exercise of delegated police powers, but to forbid the passing of a law vesting in one town or county a power of local government not granted to another."

The local option law is of general application to every county in the state. While it is left with the people of each county to say whether it shall be enforced in the county, that fact does not make it any the less a general law. It is applicable to every county in the state, and under its terms and provisions the electors of each county have a right to vote upon the question whether the sale or disposal of intoxicating

liquors as a beverage shall be prohibited in such county. Every county in the state may accept or reject it upon the same terms and conditions. It is clearly a "general law" within the meaning of that phrase as defined by the leading law-writers and the courts of last resort of the nation. The legislature has undertaken by this act to make a general law applicable to all of the counties in the state alike, as to whether the sale of intoxicating liquors shall be prohibited or not.

It is almost universally recognized that indulgence in intoxicating liquors leads to immorality, crime and pauperism, and that such liquors are in their nature dangerous to the morals, good order, health and safety of the people, and intoxicating liquors are not placed on the same footing with ordinary commodities. The business of selling such liquors has for many years, both in this country and in England, been regarded by legislatures and courts with disfavor, and it does not stand upon the same plane of utility and morality with the useful arts, trades and professions. (Joyce on Intoxicating Liquors, sec. 76.) It has been held by a long line of decisions from the United States supreme court down that there is no inherent right in a citizen of a state or of the United States to sell intoxicating liquor by retail. (*Id.*, sec. 77, and authorities there cited.) The right to engage in the retail liquor traffic is a mere privilege, and in defining the extent to which the privilege goes, the law should be strictly construed against the traffic. (*Id.*, sec. 77. See, also, Woollen & Thornton on the Law of Intoxicating Liquors, sec. 88 et seq.) Considering the view that is generally held in regard to the retail liquor business, by the adoption of the local option law the legislature intended to authorize the electors of each county to determine whether the sale of intoxicating liquors should be prohibited in the county. Sec. 7 of the local option law shows the intent of the legislature to make that law apply to all territory within a county, in special charter cities as well as cities incorporated under the general law. It provides, among other things, that "If a majority of the votes cast at such election shall be in favor of the proposition submitted (that is, to prohibit the sale

of intoxicating liquors in such county), it shall thereafter be unlawful for the board of county commissioners of the county to grant any person, firm, association, corporation or club a license to sell or dispose of intoxicating, spirituous, malt or fermented liquors or wines within said county.'' It is there declared that it shall be unlawful for a board of county commissioners to grant a license to sell or dispose of such liquors "within said county"—not within said county exclusive of special charter cities. Had the legislature intended to exclude special charter cities from the operation of said act, it would have been an easy matter to use clear and explicit language to that effect, but the phrase "within said county" has been used, which clearly means within every part and parcel of said county, and does not exclude special charter cities from the operation of said local option law.

In sec. 63 of the special charter of Lewiston, which section authorizes the council of that city to license, regulate and prohibit the sale of intoxicating beverages, it is also specified that its provisions do not empower the city of Lewiston to authorize anyone to do any act or engage in any business contrary to "the law of the land." What does the phrase "law of the land" mean as used in said section?

In the noted case of *Dartmouth College v. Woodward,* 17 U. S. (4 Wheat.) 518, 4 L. ed. 629, which has received the sanction of the courts, Webster said: "By the law of the land is clearly intended the general law which hears before it condemns, which proceeds upon inquiry and renders judgment only after trial. It means every citizen shall hold his life, liberty and property under the protection of the general rules which govern society." In many decisions it has been held that the "law of the land" and "due process of law" are synonymous phrases, and though verbally different, express the same thought and have the same meaning. In many of those decisions the phrase "due process of law" refers to procedure according to the law of the land, which process in each state is regulated by its own laws. "Due process of law" affords a hearing before it condemns and renders judgment only after trial. And it is often stated that "due process of law"

is that constitutional right which provides that no citizen shall be deprived of life, liberty or property except as provided by law. It was held in *Huber v. Riley*, 53 Pa. 112, and in *Kalloch v. Superior Court*, 56 Cal. 229, that due process of law ordinarily implies and includes a complaint, a defendant, a judge, regular allegations, opportunity to answer and a trial according to some settled course of judicial proceeding. The term "due process of law" relates primarily to the remedy or means of redress where rights are invaded, rather than to matters of substantive law. (*Board v. Collins*, 46 Neb. 411, 64 N. W. 1090.) The phrase "law of the land" in state constitutions imports a general public law equally binding upon every member of the community. (See authorities cited in vol. 3, Words & Phrases, p. 2232 et seq.)

In *Sheppard v. Johnson*, 21 Tenn. 285, the court held that whether a statute is the law of the land, within the meaning of that term as used in the bill of rights, depends upon two propositions: (1) That the legislature had the power to pass it; (2) That it is a general and public law equally binding upon every member of the community. The phrase "due process of law" in many decisions refers more particularly to the procedure prescribed by statute for the protection of life, liberty and property, and the method of enforcing rights or obtaining redress for their invasion, while the phrase "law of the land" includes the remedial law as well as substantive law; it includes that part of the law which the courts are established to administer, as opposed to the rules according to which the substantive law itself is administered. The substantive law is that part which creates, defines and regulates rights as opposed to adjective or remedial law, which prescribes the method of enforcing rights or obtaining redress for their invasion. (Black's Law Dictionary, under title "Substantive Law," p. 1132.)

The phrase "law of the land" as used in said sec. 63 of the charter of Lewiston means the law of the state, so far as the provisions of said section are concerned, and it prohibits the city of Lewiston from authorizing "anyone to do any act or engage in any business contrary to the law of the land"—the

general law of the state. By the provisions of said section, the legislature has not abdicated the right to enact police regulations, to license, regulate, restrain and prohibit the sale of intoxicating liquors in said city. The city of Lewiston was not granted thereby the absolute power to regulate its own saloons without reference to the laws of the state. By the provisions of said sec. 63, the state has reserved to itself the ultimate right to control and govern the liquor traffic within the state. The city of Lewiston was given the right to regulate, restrain and prohibit it, but it was not given the right to violate the general police laws of the state by authorizing the sale of intoxicating liquors when such sales were prohibited by the general laws of the state. The legislature did not abdicate or delegate to the city of Lewiston its power of police regulation over intoxicating liquors. Sec. 63 authorized the city of Lewiston to license and regulate the sale of intoxicating liquors within the corporate limits of such city so long as licensing and regulating were not contrary to the general law of the state. So long as the state recognized the retail liquor business and licensed it, the provision of said charter would be operative, and the city might place additional restrictions and limitations upon the business within its corporate limits or might totally prohibit it; but when the general law prohibits it, there is nothing left in that business for the city to regulate.

We therefore conclude that said local option law is a general law of the state, and the legislature in adopting it established thereby a state policy in regard to the regulation of the traffic in intoxicating liquors, and since the majority of the electors in Nez Perce county have voted in favor of prohibiting the sale of such liquors as a beverage in said county, the county commissioners are prohibited from issuing a license to retail intoxicating liquors to any person within the corporate limits of the city of Lewiston or within said county. The judgment must therefore be affirmed, and it is so ordered. Costs awarded to respondent.

Ailshie, J., concurs.