## No. 18,968.

HENRY JOHNSON *v.* PEOPLE OF THE STATE OF COLORADO.
(344 P. [2d] 181)

Decided September 14, 1959.  Rehearing denied October 5, 1959.

Mr. HENRY JOHNSON, pro se.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. GERALD HARRISON, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

PLAINTIFF in error, to whom we will refer as defendant, by information filed in the district court of Prowers county was charged with the murder of one Irvin Benson. Upon trial the jury returned a verdict of guilty of murder in the second degree. A motion for new trial was filed and overruled and defendant was sentenced to a term of not less than twenty nor more than thirty years in the penitentiary at Canon City.

The offense was alleged to have been committed December 16, 1954; judgment and sentence complained of was entered April 23, 1955; and writ of error was issued by the clerk of this court February 6, 1959.

A rule of this court, of many years standing, in effect on the date judgment was entered (Supreme Court Rule 18) provided: "A writ of error shall not be brought after the expiration of one year from the rendition of the judgment complained of * * *." At no time prior to April 15, 1955, was there any statute specifically authorizing this court to place a limitation upon the right of one to a writ of error in a criminal case. On the date last mentioned, C.R.S. '53, 39-7-27, Cum. Suppl. '57, became effective. This section provides, inter alia: "Writs of error in all criminal cases in which a sentence other than death was imposed shall be considered as writs of right and shall be issued within such times as the supreme court shall fix by rule, * * *." Prior to the adoption of the foregoing, the statute provided that, "Writs of error in all criminal cases not capital shall be considered as writs of rights, and issue of course, * * *." Pursuant to the statute this court adopted a rule effective July 1, 1956, which provides that, "A writ of error in criminal cases shall not be brought after the expiration of six months from the rendition of the judgment and sentence complained of."

In the instant case the attorney general moved to dismiss the writ of error and as grounds for the motion argued that, whether the court applies the one year limitation or the more recently adopted six months rule, plaintiff in error has brought his writ of error too late. It is pointed out by the attorney general that the district courts of Colorado are being requested on numerous occasions to furnish bills of exceptions and records without cost to indigent persons who have ' been convicted of crime; that many of these requests are made years after the judgment; and that some explanation from this court concerning the applicability of the above mentioned rules would be most effective as a guide to the district judges of the state in granting or denying these requests for transcripts. The motion of the attorney general to dismiss the writ of error was denied without prejudice, and we now elect to give it further consideration.

The statute relating to writs of error in criminal cases, which was in force prior to April 15, 1955, was construed in the case of *Caviness v. The People,* 27 Colo. 283, 60 Pac. 565. In that case it was said that the statute, " * * * gives to a defendant in all criminal cases not capital the absolute right to *a* writ of error." An "absolute" right created by statutory provision, without limitation upon the time within which it may be exercised, is a matter of substance and this court, by a purported exercise of the rule-making power, was without authority to impose a limitation upon the right created by the legislature.

If the defendant had been convicted and sentenced prior to April 15, 1955, he might well contend that under the law as it existed at the time of the judgment imposed upon him, he was entitled to a writ of error as an absolute right without limitation as to the time of the issuance thereof; however, eight days prior to the time judgment and sentence was pronounced a change in the law was effected. Defendant and his counsel were then charged with knowledge that the legis-

lature had placed a qualification, or limitation, upon the right which had theretofore been absolute. No longer were writs of error to be "considered as writs of right, and issue of course," but on and after April 15, 1955, they "shall be issued within such times as the supreme court shall fix by rule." Thus, this court was authorized as a matter of procedure to fix the time within which a writ of error could issue. *Sitler v. Brians*, 126 Colo. 370, 251 P. (2d) 319; *Ernst v. Lamb*, 73 Colo. 132, 213 Pac. 994. The purpose of the legislation was to remove any question as to the authority of the court thereafter to enact and enforce such a rule. Acting upon this legislative authority this court adopted a rule, effective July 1, 1956, requiring a writ of error to issue within six months from date of judgment.

The writ of error in the instant case did not issue until three years and ten months had passed following the entry of judgment.

The writ of error is dismissed.

Mr. Justice Frantz specially concurring.

Mr. Justice Day not participating.

Mr. Justice Frantz specially concurring:

Should one yield to the doctrine of stare decisis when the law invoked thereunder is repugnant to one's sense of fundamental law? In reluctantly deferring to the rule of precedents I would at once voice the narrow and restricted application a limitation of actions rule should have; I would make clear the straightened channel in which the rule may function. To this end I put myself on record as sanctioning the rule as operative in a most confined area.

*Ernst v. Lamb*, 73 Colo. 132, 213 Pac. 994, is authority for the proposition that the rule under discussion is a limitation of action affecting writs of error, and that it is procedural within the rule-making power of the court.

That a law limiting the bringing of an action is not substantive, but "pertains to the remedy only," is stated again in *Industrial Commission v. Weaver,* 81 Colo. 191, 254 Pac. 444.

Since a statute of limitations creates a *right* which is to be protected as any other right whenever asserted in an action, *Bates v. Gregory,* 89 Cal. 387, 26 Pac. 891, it is difficult to accede to the notion that such a law is procedural. The creation of rights is substantive. "The substantive law is that part which creates, defines, and regulates rights as opposed to adjective or remedial law, which prescribes the method of enforcing rights or obtaining redress for their invasion. Black's Law Dictionary, under title 'Substantive Law,' p. 1132." *Mix v. Board of Commissioners,* 18 Ida. 695, 112 Pac. 215, 32 L.R.A. N.S. 534.

Because it is in the nature of a statute of limitations, according to our decisions, I would have it subjected to all the infirmities of such a statute. The rule "is a personal privilege granted to the [defendant in error], which he may waive." *Foot v. Burr,* 41 Colo. 192, 92 Pac. 236, 13 L.R.A. N.S. 1210. "The doctrine of equitable estoppel may in a proper case be invoked to prevent a party from relying upon [the rule of limitation]." *C. W. Kettering Merc. Co. v. Fox,* 77 Colo. 90, 234 Pac. 464.

And since we cannot create rights, there is no absolute right in the state, once it invokes the rule, that we order the case dismissed. Invocation of the rule requires this court to exercise a wise discretion in determining whether, under the circumstances, the rule should be applied.

There is another aspect of the matter that should be removed from the area of doubt. The rule does not in its application divest this court of jurisdiction upon the lapse of the time fixed for the filing of the writ of error. This court cannot by rule limit its jurisdiction. Neither can it by rule devise a loss of jurisdiction, for such be-

yond peradventure is the enactment of substantive, law by rule. The question of jurisdiction is substantive.